# NEW YORK CENTRAL RAILROAD COMPANY *v.* WHITE.

ERROR TO THE SUPREME COURT, APPELLATE DIVISION, THIRD JUDICIAL DEPARTMENT, OF THE STATE OF NEW YORK.

No. 320.   Argued February 29, March 1, 1916; restored to docket for reargument November 13, 1916; reargued February 1, 1917.—Decided March 6, 1917.

Employment in guarding tools and materials intended for use in the construction of a new railroad station and new tracks which when finished will be used in interstate commerce, has no such direct relation to interstate transportation as will afford basis for applying the Federal Employers' Liability Act in case of accident and death. *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146, 152.

He who assails a statute as unconstitutional must show that his right is infringed by it; where, however, a statute so regulates the correlative rights of two classes—as employers and employees—that if void as to one it must be void as to the other, complaint of a party belonging to one class may require an examination of the statute in both aspects.

The New York Workmen's Compensation Law, Laws 1913, c. 816; Laws 1914, chaps. 41, 316, provides an exclusive system to govern the liabilities of employers and the rights of employees, and their dependents, in respect of compensation for disabling injuries and death caused by accident (not due to the willful intent or the intoxication of the employee) in certain employments, classed as hazardous; the duty of employers to compensate is made absolute; the compensation which employers must pay and employees (or their dependents, in death cases,) must accept in satisfaction, is measured by a prescribed scale, based on loss of earning power, gauged by the previous wage, and the nature and duration of the disability or, in case of death, the dependency of the beneficiaries; the amounts fixed are apparently moderate and reasonable and the means of collection, through administrative proceedings subject to judicial review of law questions, are apparently economical, expeditious and fair; employers are required to furnish security against future liabilities; and the act is prospective.

*Held:* (1) That neither (a) in rendering the employer liable irrespective
of the doctrines of negligence, contributory negligence, assumption
of risk and negligence of fellow servants, nor (b) in depriving the
employee, or his dependents, of the higher damages which, in some
cases, might be recovered under those doctrines, can the act be said
to violate due process.

(2) That viewed from the standpoint of natural justice, the system
provided by the act in lieu of former rules is neither arbitrary nor
unreasonable.

(3) That the exclusion of farm laborers and domestic servants from the
scheme of the act may not be judicially declared an arbitrary classi-
fication, violating the equal protection of the law.

The common-law rules respecting the rights and liabilities of employer
and employee in accident cases, viz., negligence, assumption of risk,
contributory negligence, fellow-servant doctrine, as rules defining
legal duty and guiding future conduct, may be altered by state legis-
lation, and even set aside entirely—at least if some reasonably just
substitute be provided.

Since the matter of compensation for disability or death incurred in the
course of hazardous employments is of direct interest to the public
as a matter affecting the common welfare, the liberty of employer
and employee to agree upon such compensation as part of the terms
of employment is subject to be restricted by the state police power.

The denial by a State of trial by jury is not inconsistent with due
process of law, within the meaning of the Fourteenth Amendment.

The making of a deposit of cash and securities in obedience to the New
York Workmen's Compensation Act, accompanied by an express
reservation of all contentions respecting the invalidity of the act,
does not estop the depositor from questioning its constitutionality.

Under the power to establish a compulsory Workmen's Compensation
System, the State may require employers to furnish satisfactory
proof of financial ability to pay compensation in future and may
require them to deposit reasonable amounts of securities to insure
such payments.

Section 50 of the New York Workmen's Compensation Law requires
the employer to secure payment of compensation either by state
insurance, or by insurance by an authorized corporation or associa-
tion, or by furnishing satisfactory proof to the state commission
of his financial ability to pay, in which case the commission may,
in its discretion, require him to deposit securities of a kind prescribed
by the state insurance law, in an amount to be determined by the
commission.

*Held:* (1) That in passing on these provisions the court will presume

that the method of self-insurance will be open to all employers, on reasonable terms within the power of the State to impose.

(2) That, viewed as optional alternatives, the other modes of insurance are free from constitutional objections as regards employers.

(3) That such an option is not inconsistent with the constitutional rights of employees, there being no ground to presume that any of the methods of security would prove inadequate to safeguard their interests.

169 App. Div. 903; 216 N. Y. 653, affirmed.

THE case is stated in the opinion.

*Mr. Frank V. Whiting* and *Mr. Robert E. Whalen*, with whom *Mr. H. Leroy Austin* and *Mr. William L. Visscher* were on the briefs, for plaintiff in error.

*Mr. E. Clarence Aiken*, with whom *Mr. Egburt E. Woodbury*, Attorney General of the State of New York, and *Mr. Harold J. Hinman* were on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

A proceeding was commenced by defendant in error before the Workmen's Compensation Commission of the State of New York, established by the Workmen's Compensation Law of that State,[1] to recover compensation from the New York Central & Hudson River Railroad Company for the death of her husband, Jacob White, who lost his life September 2, 1914, through an accidental injury arising out of and in the course of his employment under that company. The Commission awarded compensation in accordance with the terms of the law; its award was affirmed, without opinion, by the Appellate

---

[1] Chap. 816, Laws 1913, as reënacted and amended by c. 41, Laws 1914, and amended by c. 316, Laws 1914.

Division of the Supreme Court for the Third Judicial Department, whose order was affirmed by the Court of Appeals, without opinion. 169 App. Div. 903; 216 N. Y. 653. Federal questions having been saved, the present writ of error was sued out by the New York Central Railroad Company, successor, through a consolidation of corporations, to the rights and liabilities of the employing company. The writ was directed to the Appellate Division, to which the record and proceedings had been remitted by the Court of Appeals. *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, 200.

The errors specified are based upon these contentions: (1) That the liability, if any, of the railroad company for the death of Jacob White is defined and limited exclusively by the provisions of the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65; and (2) that to award compensation to defendant in error under the provisions of the Workmen's Compensation Law would deprive plaintiff in error of its property without due process of law, and deny to it the equal protection of the laws, in contravention of the Fourteenth Amendment.

The first point assumes that the deceased was employed in interstate commerce at the time he received the fatal injuries. According to the record, he was a night watchman, charged with the duty of guarding tools and materials intended to be used in the construction of a new station and new tracks upon a line of interstate railroad. The Commission found, upon evidence fully warranting the finding, that he was on duty at the time, and at a place not outside of the limits prescribed for the performance of his duties; that he was not engaged in interstate commerce; and that the injury received by him and resulting in his death was an accidental injury arising out of and in the course of his employment.

The admitted fact that the new station and tracks were

designed for use, when finished, in interstate commerce does not bring the case within the federal act. The test is, "Was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556, 558. Decedent's work bore no direct relation to interstate transportation, and had to do solely with construction work, which is clearly distinguishable, as was pointed out in *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.,* 229 U. S. 146, 152. And see *Chicago, Burlington & Quincy R. R. Co.* v. *Harrington,* 241 U. S. 177, 180; *Raymond* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* this day decided, *ante,* 43. The first point, therefore, is without basis in fact.

We turn to the constitutional question. The Workmen's Compensation Law of New York establishes 42 groups of hazardous employments, defines "employee" as a person engaged in one of these employments upon the premises or at the plant or in the course of his employment away from the plant of his employer, but excluding farm laborers and domestic servants; defines "employment" as including employment only in a trade, business, or occupation carried on by the employer for pecuniary gain, "injury" and "personal injury" as meaning only accidental injuries arising out of and in the course of employment, and such disease or infection as naturally and unavoidably may result therefrom; and requires every employer subject to its provisions to pay or provide compensation according to a prescribed schedule for the disability or death of his employee resulting from an accidental personal injury arising out of and in the course of the employment, without regard to fault as a cause except where the injury is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or of another, or where it results solely

from the intoxication of the injured employee while on duty, in which cases neither the injured employee nor any dependent shall receive compensation. By § 11 the prescribed liability is made exclusive, except that, if an employer fail to secure the payment of compensation as provided in § 50, an injured employee, or his legal representative in case death results from the injury, may at his option elect to claim compensation under the act or to maintain an action in the courts for damages, and in such an action it shall not be necessary to plead or prove freedom from contributory negligence, nor may the defendant plead as a defense that the injury was caused by the negligence of a fellow servant, that the employee assumed the risk of his employment, or that the injury was due to contributory negligence. Compensation under the act is not regulated by the measure of damages applied in negligence suits, but in addition to providing medical, surgical, or other like treatment, it is based solely on loss of earning power, being graduated according to the average weekly wages of the injured employee and the character and duration of the disability, whether partial or total, temporary or permanent; while in case the injury causes death the compensation is known as a death benefit, and includes funeral expenses not exceeding one hundred dollars, payments to the surviving wife (or dependent husband) during widowhood (or dependent widowerhood) of a percentage of the average wages of the deceased, and if there be a surviving child or children under the age of eighteen years an additional percentage of such wages for each child until that age is reached. There are provisions invalidating agreements by employees to waive the right to compensation, prohibiting any assignment, release, or commutation of claims for compensation or benefits except as provided by the act, exempting them from the claims of creditors, and requiring that the compensation and benefits shall be paid only to employees or their dependents,

Provision is made for the establishment of a Workmen's Compensation Commission [1] with administrative and judicial functions, including authority to pass upon claims to compensation on notice to the parties interested. The award or decision of the commission is made subject to an appeal, on questions of law only, to the Appellate Division of the Supreme Court for the Third Department, with an ultimate appeal to the Court of Appeals in cases where such an appeal would lie in civil actions. A fund is created, known as "the state insurance fund," for the purpose of insuring employers against liability under the law and assuring to the persons entitled the compensation thereby provided. The fund is made up primarily of premiums received from employers, at rates fixed by the commission in view of the hazards of the different classes of employment, and the premiums are to be based upon the total payroll and number of employees in each class at the lowest rate consistent with the maintenance of a solvent state insurance fund and the creation of a reasonable surplus and reserve. Elaborate provisions are laid down for the administration of this fund. By § 50, each employer is required to secure compensation to his employees in one of the following ways: (1) by insuring and keeping insured the payment of such compensation in the state fund; or (2) through any stock corporation or mutual association authorized to transact the business of workmen's compensation insurance in the State; or (3) "By furnishing satisfactory proof to the commission of his financial ability to pay such compensation for himself, in which case the commission may, in its discretion, require the deposit with the commission of securities of the kind prescribed in section thirteen of the insurance law, in an amount to be determined by the commission, to secure his

---

[1] By Chap. 674, Laws 1915, §§ 2 and 8, this Commission was abolished and its functions were conferred upon the newly created Industrial Commission.

liability to pay the compensation provided in this chapter."
If an employer fails to comply with this section he is made
liable to a penalty in an amount equal to the *pro rata*
premium that would have been payable for insurance in
the state fund during the period of non-compliance;
besides which, his injured employees or their dependents
are at liberty to maintain an action for damages in the
courts, as prescribed by § 11.

In a previous year, the legislature enacted a compulsory
compensation law applicable to a limited number of
specially hazardous employments, and requiring the
employer to pay compensation without regard to fault.
Laws 1910, Chap. 674. This was held by the Court of
Appeals in *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271,
to be invalid because in conflict with the due process of
law provisions of the state constitution and of the Four-
teenth Amendment. Thereafter, and in the year 1913,
a constitutional amendment was adopted, effective Jan-
uary 1, 1914, declaring:

"Nothing contained in this constitution shall be con-
strued to limit the power of the legislature to enact laws
for the protection of the lives, health, or safety of em-
ployees; or for the payment, either by employers, or by
employers and employees or otherwise, either directly
or through a state or other system of insurance or other-
wise, of compensation for injuries to employees or for
death of employees resulting from such injuries without
regard to fault as a cause thereof, except where the injury
is occasioned by the willful intention of the injured em-
ployee to bring about the injury or death of himself or of
another, or where the injury results solely from the intoxi-
cation of the injured employee while on duty; or for the
adjustment, determination and settlement, with or with-
out trial by jury, of issues which may arise under such
legislation; or to provide that the right of such compen-
sation, and the remedy therefor shall be exclusive of all

other rights and remedies for injuries to employees or for death resulting from such injuries; or to provide that the amount for such compensation for death shall not exceed a fixed or determinable sum; provided that all moneys paid by an employer to his employees or their legal representatives, by reason of the enactment of any of the laws herein authorized, shall be held to be a proper charge in the cost of operating the business of the employer."

In December, 1913, the legislature enacted the law now under consideration (Laws 1913, c. 816), and in 1914 reënacted it (Laws 1914, c. 41) to take effect as to payment of compensation on July 1 in that year. The act was sustained by the Court of Appeals as not inconsistent with the Fourteenth Amendment in *Matter of Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514; and that decision was followed in the case at bar.

The scheme of the act is so wide a departure from common-law standards respecting the responsibility of employer to employee that doubts naturally have been raised respecting its constitutional validity. The adverse considerations urged or suggested in this case and in kindred cases submitted at the same time are: (a) that the employer's property is taken without due process of law, because he is subjected to a liability for compensation without regard to any neglect or default on his part or on the part of any other person for whom he is responsible, and in spite of the fact that the injury may be solely attributable to the fault of the employee; (b) that the employee's rights are interfered with, in that he is prevented from having compensation for injuries arising from the employer's fault commensurate with the damages actually sustained, and is limited to the measure of compensation prescribed by the act; and (c) that both employer and employee are deprived of their liberty to acquire property by being prevented from making such

agreement as they choose respecting the terms of the employment.

In support of the legislation, it is said that the whole common-law doctrine of employer's liability for negligence, with its defenses of contributory negligence, fellow-servant's negligence, and assumption of risk, is based upon fictions, and is inapplicable to modern conditions of employment; that in the highly organized and hazardous industries of the present day the causes of accident are often so obscure and complex that in a material proportion of cases it is impossible by any method correctly to ascertain the facts necessary to form an accurate judgment, and in a still larger proportion the expense and delay required for such ascertainment amount in effect to a defeat of justice; that under the present system the injured workman is left to bear the greater part of industrial accident loss, which because of his limited income he is unable to sustain, so that he and those dependent upon him are overcome by poverty and frequently become a burden upon public or private charity; and that litigation is unduly costly and tedious, encouraging corrupt practices and arousing antagonisms between employers and employees.

In considering the constitutional question, it is necessary to view the matter from the standpoint of the employee as well as from that of the employer. For, while plaintiff in error is an employer, and cannot succeed without showing that its rights as such are infringed (*Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531, 544; *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571, 576;) yet, as pointed out by the Court of Appeals in the *Jensen Case*, 215 N. Y. 526, the exemption from further liability is an essential part of the scheme, so that the statute if invalid as against the employee is invalid as against the employer.

The close relation of the rules governing responsibility as between employer and employee to the fundamental rights

of liberty and property is of course recognized. But those rules, as guides of conduct, are not beyond alteration by legislation in the public interest. No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit. *Munn* v. *Illinois,* 94 U. S. 113, 134; *Hurtado* v. *California,* 110 U. S. 516, 532; *Martin* v. *Pittsburg & Lake Erie R. R. Co.,* 203 U. S. 284, 294; *Second Employers' Liability Cases,* 223 U. S. 1, 50; *Chicago & Alton R. R. Co.* v. *Tranbarger,* 238 U. S. 67, 76. The common law bases the employer's liability for injuries to the employee upon the ground of negligence; but negligence is merely the disregard of some duty imposed by law; and the nature and extent of the duty may be modified by legislation, with corresponding change in the test of negligence. Indeed, liability may be imposed for the consequences of a failure to comply with a statutory duty, irrespective of negligence in the ordinary sense; safety appliance acts being a familiar instance. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Taylor,* 210 U. S. 281, 295; *Texas & Pacific Ry. Co.* v. *Rigsby,* 241 U. S. 33, 39, 43.

The fault may be that of the employer himself, or—most frequently—that of another for whose conduct he is made responsible according to the maxim *respondeat superior.* In the latter case the employer may be entirely blameless, may have exercised the utmost human foresight to safeguard the employee; yet, if the *alter ego* while acting within the scope of his duties be negligent—in disobedience, it may be, of the employer's positive and specific command—the employer is answerable for the consequences. It cannot be that the rule embodied in the maxim is unalterable by legislation.

The immunity of the employer from responsibility to an employee for the negligence of a fellow employee is of comparatively recent origin, it being the product of the judicial conception that the probability of a fellow work-

man's negligence is one of the natural and ordinary risks of the occupation, assumed by the employee and presumably taken into account in the fixing of his wages. The earliest reported cases are *Murray* v. *South Carolina R. R. Co.* (1841), 1 McMull. (S. C.) 385, 398; *Farwell* v. *Boston & Worcester R. R. Corp.* (1842), 4 Metc. 49, 57; *Hutchinson* v. *York, Newcastle & Berwick Ry. Co.* (1850), 5 Exch. 343, 351, 19 L. J. Exch. 296, 299, 14 Jur. 837, 840; *Wigmore* v. *Jay* (1850), 5 Exch. 354, 19 L. J. Exch. 300, 14 Jur. 838, 841; *Bartonshill Coal Co.* v. *Reid* (1858), 3 Macq. H. L. Cas. 266, 284, 295.   And see *Randall* v. *Baltimore & Ohio R. R. Co.*, 109 U. S. 478, 483; *Northern Pacific R. R. Co.* v. *Herbert*, 116 U. S. 642, 647.   The doctrine has prevailed generally throughout the United States, but with material differences in different jurisdictions respecting who should be deemed a fellow servant and who a vice-principal or *alter ego* of the master, turning sometimes upon refined distinctions as to grades and departments in the employment.   See *Knutter* v. *N. Y. & N. J. Telephone Co.*, 67 N. J. L. 646, 650–653.   It needs no argument to show that such a rule is subject to modification or abrogation by a State upon proper occasion.

The same may be said with respect to the general doctrine of assumption of risk.   By the common law the employee assumes the risks normally incident to the occupation in which he voluntarily engages; other and extraordinary risks and those due to the employer's negligence he does not assume until made aware of them, or until they become so obvious that an ordinarily prudent man would observe and appreciate them, in either of which cases he does assume them, if he continue in the employment without obtaining from the employer an assurance that the matter will be remedied; but if he receive such an assurance, then, pending performance of the promise, the employee does not in ordinary cases assume the special risk.   *Seaboard Air Line Ry.* v. *Horton*, 233

U. S. 492, 504; 239 U. S. 595, 599. Plainly, these rules, as guides of conduct and tests of liability, are subject to change in the exercise of the sovereign authority of the State.

So, also, with respect to contributory negligence. Aside from injuries intentionally self-inflicted, for which the statute under consideration affords no compensation, it is plain that the rules of law upon the subject, in their bearing upon the employer's responsibility, are subject to legislative change; for contributory negligence, again, involves a default in some duty resting on the employee, and his duties are subject to modification.

It may be added, by way of reminder, that the entire matter of liability for death caused by wrongful act, both within and without the relation of employer and employee, is a modern statutory innovation, in which the States differ as to who may sue, for whose benefit, and the measure of damages.

But it is not necessary to extend the discussion. This court repeatedly has upheld the authority of the States to establish by legislation departures from the fellow-servant rule and other common-law rules affecting the employer's liability for personal injuries to the employee. *Missouri Pacific Ry. Co.* v. *Mackey,* 127 U. S. 205, 208; *Minneapolis & St. Louis Ry. Co.* v. *Herrick,* 127 U. S. 210; *Minnesota Iron Co.* v. *Kline,* 199 U. S. 593, 598; *Tullis* v. *Lake Erie & Western R. R. Co.,* 175 U. S. 348; *Louisville & Nashville R. R. Co.* v. *Melton,* 218 U. S. 36, 53; *Chicago, Indianapolis & Louisville Ry. Co.* v. *Hackett,* 228 U. S. 559; *Wilmington Star Mining Co.* v. *Fulton,* 205 U. S. 60, 73; *Missouri Pacific Ry. Co.* v. *Castle,* 224 U. S. 541, 544. A corresponding power on the part of Congress, when legislating within its appropriate sphere, was sustained in *Second Employers' Liability Cases,* 223 U. S. 1. And see *El Paso & Northeastern Ry. Co.* v. *Gutierrez,* 215 U. S. 87, 97; *Baltimore & Ohio R. R. Co.* v. *Interstate Commerce Commission,* 221 U. S. 612, 619.

It is true that in the case of the statutes thus sustained there were reasons rendering the particular departures appropriate. Nor is it necessary, for the purposes of the present case, to say that a State might, without violence to the constitutional guaranty of "due process of law," suddenly set aside all common-law rules respecting liability·as between employer and employee, without providing a reasonably just substitute. Considering the vast industrial organization of the State of New York, for instance, with hundreds of thousands of plants and millions of wage-earners, each employer on the one hand having embarked his capital, and each employee on the other having taken up his particular mode of earning a livelihood, in reliance upon the probable permanence of an established body of law governing the relation, it perhaps may be doubted whether the State could abolish all rights of action on the one hand, or all defenses on the other, without setting up something adequate in their stead. No such question is here presented, and we intimate no opinion upon it. The statute under consideration sets aside one body of rules only to establish another system in its place. If the employee is no longer able to recover as much as before in case of being injured through the employer's negligence, he is entitled to moderate compensation in all cases of injury, and has a certain and speedy remedy without the difficulty and expense of establishing negligence or proving the amount of the damages. Instead of assuming the entire consequences of all ordinary risks of the occupation, he assumes the consequences, in excess of the scheduled compensation, of risks ordinary and extraordinary. On the other hand, if the employer is left without defense respecting the question of fault, he at the same time is assured that the recovery is limited, and that it goes directly to the relief of the designated beneficiary. And just as the employee's assumption of ordinary risks at common law presumably was taken into account in fixing

the rate of wages, so the fixed responsibility of the employer, and the modified assumption of risk by the employee under the new system, presumably will be reflected in the wage scale. The act evidently is intended as a just settlement of a difficult problem, affecting one of the most important of social relations, and it is to be judged in its entirety. We have said enough to demonstrate that, in such an adjustment, the particular rules of the common law affecting the subject-matter are not placed by the Fourteenth. Amendment beyond the reach of the law making power of the State; and thus we are brought to the question whether .the method of compensation that is established as a substitute transcends the limits of permissible state action.

We will consider, first, the scheme of compensation, deferring for the present the question of the manner in which the employer is required to secure payment.

Briefly, the statute imposes liability upon the employer to make compensation for disability or death of the employee resulting from accidental personal injury arising out of and in the course of the employment, without regard to fault as a cause except where the injury or death is occasioned by the employee's willful intention to produce it, or where the injury results solely from his intoxication while on duty; it graduates the compensation for disability according to a prescribed scale based upon the loss of earning power, having regard to the previous wage and the character and duration of the disability; and measures the death benefits according to the dependency of the surviving wife, husband, or infant children. Perhaps we should add that it has no retrospective effect, and applies only to cases arising some months after its passage.

Of course, we cannot ignore the question whether the new arrangement is arbitrary and unreasonable, from the standpoint of natural justice. Respecting this, it is important to be observed that the act applies only to dis-

abling or fatal personal injuries received in the course of hazardous employment in gainful occupation. Reduced to its elements, the situation to be dealt with is this: Employer and employee, by mutual consent, engage in a common operation intended to be advantageous to both; the employee is to contribute his personal services, and for these is to receive wages, and ordinarily nothing more; the employer is to furnish plant, facilities, organization, capital, credit, is to control and manage the operation, paying the wages and other expenses, disposing of the product at such prices as he can obtain, taking all the profits, if any there be, and of necessity bearing the entire losses. In the nature of things, there is more or less of a probability that the employee may lose his life through some accidental injury arising out of the employment, leaving his widow or children deprived of their natural support; or that he may sustain an injury not mortal but resulting in his total or partial disablement, temporary or permanent, with corresponding impairment of earning capacity. The physical suffering must be borne by the employee alone; the laws of nature prevent this from being evaded or shifted to another, and the statute makes no attempt to afford an equivalent in compensation. But, besides, there is the loss of earning power; a loss of that which stands to the employee as his capital in trade. This is a loss arising out of the business, and, however it may be charged up, is an expense of the operation, as truly as the cost of repairing broken machinery or any other expense that ordinarily is paid by the employer. Who is to bear the charge? It is plain that, on grounds of natural justice, it is not unreasonable for the State, while relieving the employer from responsibility for damages measured by common-law standards and payable in cases where he or those for whose conduct he is answerable are found to be at fault, to require him to contribute a reasonable amount, and according to a reasonable and definite scale,

by way of compensation for the loss of earning power incurred in the common enterprise, irrespective of the question of negligence, instead of leaving the entire loss to rest where it may chance to fall—that is, upon the injured employee or his dependents. Nor can it be deemed arbitrary and unreasonable, from the standpoint of the employee's interest, to supplant a system under which he assumed the entire risk of injury in ordinary cases, and in others had a right to recover an amount more or less speculative upon proving facts of negligence that often were difficult to prove, and substitute a system under which in all ordinary cases of accidental injury he is sure of a definite and easily ascertained compensation, not being obliged to assume the entire loss in any case but in all cases assuming any loss beyond the prescribed scale.

Much emphasis is laid upon the criticism that the act creates liability without fault. This is sufficiently answered by what has been said, but we may add that liability without fault is not a novelty in the law. The common-law liability of the carrier, of the inn-keeper, of him who employed fire or other dangerous agency or harbored a mischievous animal, was not dependent altogether upon questions of fault or negligence. Statutes imposing liability without fault have been sustained. *St. Louis & San Francisco Ry. Co.* v. *Mathews*, 165 U. S. 1, 22; *Chicago, Rock Island and Pacific Ry. Co.* v. *Zernecke*, 183 U. S. 582, 586.

We have referred to the maxim *respondeat superior*. In a well-known English case, *Hall* v. *Smith*, 2 Bing. 156, 160, this maxim was said by Best, C. J., to be "bottomed on this principle, that he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it." And this view has been adopted in New York. *Cardot* v. *Barney*, 63 N. Y. 281, 287. The provision for compulsory compensation, in the act under consideration,

cannot be deemed to be an arbitrary and unreasonable application of the principle, so as to amount to a deprivation of the employer's property without due process of law. The pecuniary loss resulting from the employee's death or disablement must fall somewhere. It results from something done in the course of an operation from which the employer expects to derive a profit. In excluding the question of fault as a cause of the injury, the act in effect disregards the proximate cause and looks to one more remote—the primary cause, as it may be deemed—and that is, the employment itself. For this, both parties are responsible, since they voluntarily engage in it as co-adventurers, with personal injury to the employee as a probable and foreseen result. In ignoring any possible negligence of the employee producing or contributing to the injury, the lawmaker reasonably may have been influenced by the belief that in modern industry the utmost diligence in the employer's service is in some degree inconsistent with adequate care on the part of the employee for his own safety; that the more intently he devotes himself to the work, the less he can take precautions for his own security. And it is evident that the consequences of a disabling or fatal injury are precisely the same to the parties immediately affected, and to the community, whether the proximate cause be culpable or innocent. Viewing the entire matter, it cannot be pronounced arbitrary and unreasonable for the State to impose upon the employer the absolute duty of making a moderate and definite compensation in money to every disabled employee, or in case of his death to those who were entitled to look to him for support, in lieu of the common-law liability confined to cases of negligence.

This, of course, is not to say that any scale of compensation, however insignificant on the one hand or onerous on the other, would be supportable. In this case, no criticism is made on the ground that the compensation pre-

scribed by the statute in question is unreasonable in amount, either in general or in the particular case. Any question of that kind may be met when it arises.

But, it is said, the statute strikes at the fundamentals of constitutional freedom of contract; and we are referred to two recent declarations by this court. The first is this: "Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense." *Coppage* v. *Kansas,* 236 U. S. 1, 14. And this is the other: "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax* v. *Raich,* 239 U. S. 33, 41.

It is not our purpose to qualify or weaken either of these declarations in the least. And we recognize that the legislation under review does measurably limit the freedom of employer and employee to agree respecting the terms of employment, and that it cannot be supported except on the ground that it is a reasonable exercise of the police power of the State. In our opinion it is fairly supportable upon that ground. And for this reason: The subject-matter in respect of which freedom of contract is restricted is the matter of compensation for human life or limb lost or disability incurred in the course of hazardous employment, and the public has a direct interest in this as affecting the common welfare. "The whole is no greater than the sum of all the parts, and when the individual health, safety, and welfare are sacrificed or neglected, the State

must suffer." *Holden* v. *Hardy,* 169 U. S. 366, 397. It cannot be doubted that the State may prohibit and punish self-maiming and attempts at suicide; it may prohibit a man from bartering away his life or his personal security; indeed, the right to these is often declared, in bills of rights, to be "natural and inalienable"; and the authority to prohibit contracts made in derogation of a lawfully established policy of the State respecting compensation for accidental death or disabling personal injury is equally clear. *Chicago, Burlington & Quincy R. R. Co.* v. *Mc-Guire,* 219 U. S. 549, 571; *Second Employers' Liability Cases,* 223 U. S. 1, 52.

We have not overlooked the criticism that the act imposes no rule of conduct upon the employer with respect to the conditions of labor in the various industries embraced within its terms, prescribes no duty with regard to where the workmen shall work, the character of the machinery, tools, or appliances, the rules or regulations to be established, or the safety devices to be maintained. This statute does not concern itself with measures of prevention, which presumably are embraced in other laws. But the interest of the public is not confined to these. One of the grounds of its concern with the continued life and earning power of the individual is its interest in the prevention of pauperism, with its concomitants of vice and crime. And, in our opinion, laws regulating the responsibility of employers for the injury or death of employees arising out of the employment bear so close a relation to the protection of the lives and safety of those concerned that they properly may be regarded as coming within the category of police regulations. *Sherlock* .v. *Alling,* 93 U. S. 99, 103; *Missouri Pacific Ry. Co.* v. *Castle,* 224 U. S. 541, 545.

No question is made but that the procedural provisions of the act are amply adequate to afford the notice and opportunity to be heard required by the Fourteenth

Amendment. The denial of a trial by jury is not inconsistent with "due process." *Walker* v. *Sauvinet,* 92 U. S. 90; *Frank* v. *Mangum,* 237 U. S. 309, 340.

The objection under the "equal protection" clause is not pressed. The only apparent basis for it is in exclusion of farm laborers and domestic servants from the scheme. But, manifestly, this cannot be judicially declared to be an arbitrary classification, since it reasonably may be considered that the risks inherent in these occupations are exceptionally patent, simple, and familiar. *Missouri, Kansas & Texas Ry. Co.* v. *Cade,* 233 U. S. 642, 650, and cases there cited.

We conclude that the prescribed scheme of compulsory compensation is not repugnant to the provisions of the Fourteenth Amendment, and are brought to consider, next, the manner in which the employer is required to secure payment of the compensation. By § 50, this may be done in one of three ways: (a) state insurance, (b) insurance with an authorized insurance corporation or association, or (c) by a deposit of securities. The record shows that the predecessor of plaintiff in error chose the third method, and, with the sanction of the commission, deposited securities to the amount of $300,000, under § 50, and $30,000 in cash as a deposit to secure prompt and convenient payment, under § 25, with an agreement to make a further deposit if required. This was accompanied with a reservation of all contentions as to the invalidity of the act, and had not the effect of preventing plaintiff in error from raising the questions we have discussed.

The system of compulsory compensation having been found to be within the power of the State, it is within the limits of permissible regulation, in aid of the system, to require the employer to furnish satisfactory proof of his financial ability to pay the compensation, and to deposit a reasonable amount of securities for that purpose. The third clause of § 50 has not been, and presumably will

not be, construed so as to give an unbridled discretion to the commission; nor is it to be presumed that solvent employers will be prevented from becoming self-insurers on reasonable terms. No question is made but that the terms imposed upon this railroad company were reasonable in view of the magnitude of its operations, the number of its employees, and the amount of its payroll (about $50,000,000 annually); hence no criticism of the practical effect of the third clause is suggested.

This being so, it is obvious that this case presents no question as to whether the State might, consistently with the Fourteenth Amendment, compel employers to effect insurance according to either of the plans mentioned in the first and second clauses. There is no such compulsion, since self-insurance under the third clause presumably is open to all employers on reasonable terms that it is within the power of the State to impose. Regarded as optional arrangements, for acceptance or rejection by employers unwilling to comply with that clause, the plans of insurance are unexceptionable from the constitutional standpoint. Manifestly, the employee is not injuriously affected in a constitutional sense by the provisions giving to the employer an option to secure payment of the compensation in either of the modes prescribed, for there is no presumption that either will prove inadequate to safeguard the employee's interests.

*Judgment affirmed.*