## SOUTHERN RY. CO. v. McGUIN.

(Circuit Court of Appeals, Fourth Circuit.  February 20, 1917.)

No. 1453.

1. COMMERCE ⊂⊃27(5)—FEDERAL EMPLOYERS' LIABILITY ACT—INJURIES TO SERVANT—EMPLOYMENT—"INTERSTATE COMMERCE"—SECTION MAN.

   A section man, engaged in assisting a railroad surveyor in survey made to improve the curve in a track used in interstate commerce, is employed in "interstate commerce," within the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]).

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. MASTER AND SERVANT ⊂⊃278(18)—INJURIES TO SERVANT—EVIDENCE—NEGLIGENCE OF MASTER.

   In an action for the death of a railroad section man, who was struck by a train running north on the south-bound track, evidence *held* sufficient to warrant the jury in finding negligence of the engine men in failing to sound sufficient warning signals to deceased, in view of the unusual operation of the train.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 971.]

3. MASTER AND SERVANT ⊂⊃137(4)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—OPPOSITION OF TRAIN.

   Running a north-bound train on the south-bound track is not negligence, but imposes on the railroad company greater precautions to warn employés of the approach of the train, since it must take notice that the employé will be somewhat less on guard against a train coming from that direction.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 274, 277, 278.]

4. MASTER AND SERVANT ⊂⊃213(4)—INJURIES TO SERVANT—ASSUMPTION OF RISK—NEGLIGENCE OF MASTER.

   A railroad section man assumes the risk of the occasional necessity to run trains on tracks intended for those coming in the opposite direction, but the risk so assumed is subject to the limitation that the trains be run with the care to be reasonably expected under such conditions.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 562.]

5. TRIAL ⊂⊃296(6)—INSTRUCTIONS—REFUSAL OF REQUESTED CHARGE—REPETITION OF CHARGE.

   The refusal of unobjectionable requests by defendant to charge on the subject of assumption of risk is not prejudicial, though no instruction on the subject of assumption of risk was given under that name, where another instruction, given at defendant's request, accurately and clearly stated that the employé assumed all risk of his occupancy and his situation not due to defendant's negligence.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 709.]

   Knapp, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Virginia, at Alexandria; Edmund Waddill, Jr., Judge.

Action by Virginia McGuin, as administratrix of Charles McGuin, deceased, against the Southern Railway Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

M. Carter Hall, of Fairfax, Va. (Moore, Keith, McCandlish & Hall, of Fairfax, Va., and Robert B. Tunstall, of Norfolk, Va., on the brief), for plaintiff in error.

Leo P. Harlow, of Alexandria, Va. (Charles Bendheim, of Washington, D. C., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. Charles McGuin, a section man, was struck and killed by one of the defendant's locomotives on January 22, 1912. In this action under the federal Employers' Liability Act, his administratrix recovered a verdict for $3,000 for the benefit of his wife and children.

[1] The first position taken is that the jury should have been directed to find a verdict for the defendant, because the only reasonable inferences to be drawn from the evidence were: (1) McGuin was not engaged in interstate commerce at the time of the accident. (2) His death was due to his own negligence without negligence on the part of the defendant. (3) McGuin assumed the risk.

Prior to the day of the accident, McGuin had been engaged in the usual track work done by section men. On that day, by direction of the track foreman, he was working with Parati, a road engineer, who was surveying and setting stakes with the view of improving a curve by a slight change in the track. At the point of the accident the road was double-tracked, and, owing to a broken rail in the north-bound track, a north-bound passenger train was running at about 35 to 40 miles an hour on the south-bound track. A few minutes before the approach of the train, Parati, the surveyor, had sent McGuin north to a designated point to hold a rod by means of which he intended to take a back sight. McGuin started on the north-bound track looking for the designated station. When in a cut on a curve, where he would have been able to see the approaching train only 661 feet, he was struck by the engine and killed. Parati completed the work by placing the stakes to guide the trackmen in changing the rails, but the change in the track was never made. The defendant is a carrier of both intrastate and interstate commerce.

The case of Pedersen v. Delaware, etc., R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, seems conclusive on the first point. It was there held that the work of keeping in repair the track, roadbed, and other instrumentalities of a railroad engaged in interstate commerce is so closely related to interstate commerce as to be in practice and in legal contemplation a part of it. The work held to be a part of interstate commerce was the carrying of bolts or rivets to be used in taking out an old girder of a bridge and putting in a new one. Here the work was surveying and marking the changes to be made in the position of the cross-ties and rails, so as to make a better curve. No distinction can be founded on the failure of the railroad to complete the work by actually making the changes contemplated. Making the survey was as much a part of the work as laying the rails according to the survey. The numerous cases in which the work was on things which had not at the time become instrumentalities of interstate commerce obviously have no application.

[2] The second proposition, that there was no proof of negligence on the part of the defendant, is one of difficulty. The train had passed Parati and Miller, another workman, when the accident occurred, and the question of negligence depends upon their testimony and that of Lynn, the engineer, and Daniels, the fireman. The fireman testified that he was looking out from the left side of the cab, and saw McGuin walking between the two tracks, where he would probably have been struck; he called the engineer's attention to him; the engineer blew a crossing signal; McGuin moved out of his sight; the engineer then applied the brakes and blew the alarm signal; he last saw McGuin for an instant within 8 or 10 feet of the engine, as he was coming across to the left rail of the south-bound track. The engineer testified that, upon the fireman speaking to him, he leaned out of the cab and saw McGuin between the two tracks, where he considered him safe, but he blew the station signal; McGuin looked over his shoulder, seemed to see the situation, stepped upon the north-bound track, where he was safe, and walked on, then looked straight back to the approaching train, seemed to become confused, started two or three ways in a second, and then darted across the south-bound track in front of the engine and was struck, when one more step would have put him clear. As he started across the track the alarm signal was given and the emergency brakes applied.

Miller's testimony differs in the important particular that only the alarm signal was given to McGuin. He says that, standing on the track looking at McGuin, he saw him, just as he was passing out of sight, change his course towards the south-bound track; immediately afterwards, as the train approached, but before it was in sight, it blew a station signal, which he supposed was for Springfield or Edsall; after the train had passed him, he heard only the alarm signal, and that at the same moment the emergency brakes were applied. Miller, from the conditions surrounding him and McGuin, had his attention concentrated on the train and was on the alert for its signals; and if his testimony be accepted on the point of difference between him and the engineer and fireman with respect to the signal, it would support a reasonable inference that, if McGuin heard the train, he supposed it to be on the north-bound track and so moved to the south-bound track to escape it, that, if the fireman and engineer saw him, they must have seen him on or near the south-bound track, and that the engineer gave no signal to warn him of the unusual fact that a north-bound train was approaching on the south-bound track until it was too late for him to escape.

[3] Running a north-bound train on the south-bound track is not evidence of negligence, and all the employés of the railroad must take notice of the occasional necessity to make the change. Nevertheless, as that is not the usual method of running, the railroad company must take notice that their employés will naturally be somewhat less on guard against a north-bound train running on a south-bound track, and due care requires greater precautions. The case is thus distinguished from the cases holding that under ordinary conditions an engineer may assume that a man in the apparent possession of his faculties will get

out of the way of an approaching train. Therefore it was not unreasonable to hold the railroad company guilty of negligence in this case, since it could well be inferred from Miller's testimony that the engineer, running a north-bound train around a curve on a south-bound track, saw McGuin on or very near the south-bound track, and gave him no signal till it was too late. This conclusion is so clearly consonant with common sense, and the principle has been so recently discussed and stated by this court in Southern Ry. Co. v. Cook, 226 Fed. 1, 141 C. C. A. 115, that reference to the adjudicated cases seems unnecessary.

[4] These considerations also dispose of the position that McGuin's death was due to a risk assumed by him. He assumed the risk of the occasional necessity to run trains on tracks intended for trains going in the opposite direction, but the risk assumed was subject to the limitation that such trains should be run with the care to be reasonably expected under such conditions. Whether this train was so run was, as we have pointed out, a question for the jury. There is good ground to say McGuin was guilty of contributory negligence in assuming, as he probably did, that the train was on the north-bound track. Belt Ry. Co. v. Skszypczak, 225 Ill. 242, 80 N. E. 115. But contributory negligence would not prevent a recovery.

[5] It is true that the District Judge refused to charge one or more unobjectionable requests of the defendant on the subject of assumption of risk, and that no instruction on the subject of assumption of risk was given under that name. But the defendant was not prejudiced by the omission, for instruction F, given at defendant's request, is an accurate and clear statement that McGuin assumed all risks of his occupation and his situation, not due to defendant's negligence in failing to give warning after perceiving his peril.

Affirmed.

KNAPP, Circuit Judge (dissenting). I am unable to concur in affirming the judgment in this case, because of my conviction that nothing was shown which would warrant the jury in charging the railroad company with negligence. The majority opinion concedes that any additional hazard resulting from running a north-bound train on the south-bound track was a risk assumed by the employé, but holds that this somewhat unusual movement called for greater care for the protection of those at work on the right of way. Granting this to be so, the question nevertheless remains whether there was any proof which permitted an inference of failure to take every reasonable precaution which was required by the actual situation. If the testimony of the engineer and fireman, the only eyewitnesses of the accident, is to be believed, it cannot be doubted that McGuin had ample warning of the approach of the train and could plainly see that it was on the south-bound track. It is undisputed that from the point where he was struck there was an unobstructed view of the train when it was still at a distance of some 660 feet, or about an eighth of a mile. And in my judgment it does not matter whether the engineer blew a crossing signal or an alarm signal when McGuin was first seen, because the signal then

given served to warn McGuin, who at once turned about, looked at the train, and stepped to a place of safety on the north-bound track.

But the jury were permitted to disregard this testimony, and to find that no warning was given until too late, because Miller says that he heard a station whistle, probably for Edsall, and then, after an interval, a danger signal, which was doubtless the one given when the train was right upon McGuin. In other words, because Miller did not hear the crossing signal, to.which the engineer and fireman testified, the jury were allowed to find that the crossing signal was not given, and therefore that McGuin had no warning that a train was coming, much less that it was on the south-bound track. This seems to be the theory upon which the recovery is sustained, although .in the brief of defendant in error it is assumed and asserted that a crossing signal was given, from which it is argued that:

"If the engineer had blown the true danger signal when he blew the false crossing signal for McGuin, the latter would more.likely be living than dead."

Moreover, Miller was at a considerable distance to the south, around the curve in a cut, and the train was still further south of him, so that he could not yet see it, when the station signal he mentions was given, and it was three or four minutes after McGuin had passed entirely out of his sight before he heard the danger signal. He could not know, and did not attempt to say, how far McGuin had gone, or where he was walking, when the train got where the engineer could see him. Yet on this alleged discrepancy between the testimony of the engineer and fireman, and the negative testimony of Miller, who does not say that a crossing signal was not given when the train was still an eighth of a mile from McGuin, the jury is upheld in ignoring the positive testimony of two reputable witnesses—convicting them in effect of deliberate perjury—and rendering a verdict which, as I see the case, has only the support of pure speculation.

I think a verdict should have been directed for the defendant.