## OREGON SHORT LINE R. CO. v. GUBLER.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1925.)

No. 6969.

**1. Master and servant ⬤⟳286(31)—Railroad's negligence as to servant struck by track car held for jury.**

In servant's action for injuries when struck by a track car running west on east-bound track, question of defendant's negligence *held* for jury.

**2. Commerce ⬤⟳27(8)—Repairs or replacement, affecting instrumentalities of Interstate Commerce, constitutes "interstate commerce," while purely new construction does not.**

Work in nature of repair or replacement in connection with interstate commerce, or work in such close proximity to instrumentalities of interstate commerce that they may be affected by work done, constitutes "interstate commerce," while purely new construction does not.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**3. Commerce ⬤⟳27(8)—Injury to employee while engaged in installing electrically controlled switch and signal on railroad occurred in interstate commerce.**

Injury to employee while engaged in installing an electrically controlled switch and signal in a trench under the track, which work affected directly the physical condition and safety of that track and of interstate commerce

moving over it daily, *held* to have occurred in interstate commerce.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action by Ernest R. Gubler against the Oregon Short Line Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert B. Porter, of Salt Lake City, Utah (George H. Smith, J. V. Lyle, and Dana T. Smith, all of Salt Lake City, Utah, on the brief), for plaintiff in error.

Willard Hanson, of Salt Lake City, Utah (B. L. Liberman and A. H. Hougaard, both of Salt Lake City, Utah, on the brief), for defendant in error.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and WILLIAMS, District Judge.

STONE, Circuit Judge. This is a writ of error from a judgment entered on verdict allowing recovery of damages for personal injury.

Two points are presented here: (1) That the evidence is insufficient to show any negligence on the part of the defendant; (2) that the injury did not occur in interstate commerce and is therefore subject to the Employers' Liability Act of the state of Idaho.

[1] I. The negligence alleged is that plaintiff, who was employed in connection with installing an electrically controlled switch and signal in place of a hand-operated switch connecting two main lines operated in interstate commerce, was struck by a track car coming west on the east-bound line at a high rate of speed without lookout, all in violation of the rules of operation of the railway company. There is clear evidence, on the part of the plaintiff, in support of each of the above allegations. In fact the opening statement for defendant concedes such negligence. Counsel stated:

"I think the evidence will show you that the foreman did not use the care that he might have used, that he might have prevented this accident had he used a little more care, but the evidence will also show that the plaintiff was equally guilty of negligence."

In another part of the statement counsel said:

"Now I merely mention these matters; I am not very much concerned in the way this accident happened. Our defense is that the plaintiff was not engaged in interstate work; he was engaged strictly in state work; that, therefore, he is subject to the compensation law of the state of Idaho."

Contributory negligence is not involved in this court. The question of the negligence of defendant was properly submitted to the jury.

[2] II. Whether an employee is engaged in interstate commerce at the time of an accident is sometimes a very close question, becoming almost one of degree at times. This is particularly true where the employee is not engaged in the operation of instrumentalities of interstate commerce, but in repairs, replacement or new construction in connection with such commerce. The decisions of the Supreme Court and of this circuit are to the effect that such work if in the nature of repair or replacement or in such close proximity to instrumentalities of interstate commerce that they may be affected by the work done constitutes interstate commerce, while purely new construction does not. Kinzell v. C., M. & St. P. Ry. Co., 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893; N. Y. Central R. R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; C., B. & Q. R. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Bravis v. C., M. & St. P. Ry. Co., 217 F. 234, 133 C. C. A. 228. Also see S. Ry. Co. v. McGuin, 240 F. 649, 153 C. C. A. 447 (4th Cir.); P. B. & W. R. R. Co. v. McConnell, 228 F. 263, 142 C. C. A. 555 (3d Cir.) and C. & P. S. Ry. Co. v. Sauter, 223 F. 604, 139 C. C. A. 150 (9th Cir.). Of course, all repair and replacement is, in a sense, new construction, but it is not new construction in the sense above used. Also, it would seem that, where the main purpose is repair or replacement, the fact that such will result in improvement should not necessarily make it new construction.

There is no dispute as to the work being done here. There were two main lines used daily in interstate commerce. These lines were protected by a semaphore signal system. This system indicated the condition at switches joining the main lines. Near a small station there were various switches connected with these main lines and used in interstate commerce. Some of these switches were operated from the station house by an electrical device which was connected with and used some of the equipment of the semaphore system. Two switches, at

,that place, were not so connected but were operated by hand. One of these two switches connected the east-bound main line track with a passing track and the other was the wye switch where the switch tracks from the two main lines joined the passing track, located between the main lines. A crew of twelve men, of whom plaintiff was one, were engaged in converting these two switches from hand to electrical operation and in installing an additional signal at the east-bound main line switch. This work consisted, generally, in placing certain electrical apparatus near the switches and connecting them with the switches, the new signals and the station house by wires. These wires were, in part, laid in a wooden boxing or trunking which was buried underground in shallow trenches and then covered over with earth. Part of this trenching had to be dug under the rails and between the ties of the east-bound main line track. On cross-examination, the foreman of this crew testified as follows:

"Q. And that work had to be done, that trenching had to be done according to a particular manner, didn't it? A. Yes, sir.

"Q. When they were digging that, in the very placing of the dirt they had to see that they didn't interfere with the tracks, didn't they? A. Yes, sir.

"Q. And when they crossed over there and underneath them, they had to do it in a particular manner, didn't they, to see that it didn't interfere with their interstate trains? A. Yes, sir.

"Q. And when they covered it up they had to do it in a particular manner so as not to interfere with your interstate trains, didn't they? A. Yes, sir.

"Q. And that is the work that you and the gang were doing on that day when Mr. Gubler got hurt, wasn't it? A. Yes, sir."

The trench under this track was to hold the wires going to a "dwarf switch," or signal light, the office of which was to indicate the condition (as to safety) of the switch to trains on the east-bound main track. The immediate duty of plaintiff, at the time of the accident, was to lay and cover over the trunking in this trench under the east-bound main track. This trench was about a foot wide and about 14 inches deep. After laying the trunking, it was his duty to cover it with earth, refilling the trench, and tamp it firmly so that no hole would be left and the ties of this main track would not be loosened. Immediately before the accident, a freight train passed on the west-bound main line. In accordance with the rules of the company, this crew stopped work and took positions of safety between the main line tracks. As the rear end of this train passed plaintiff, he returned to his work under the east-bound main track and about the time he reached that track he was struck by a track car coming rapidly from the west on the east-bound track.

[3] It is immaterial whether this work be regarded as a repair or replacement of existing switching facilities or as an extension (new construction) of the existing signal system. It partakes properly of both. If it was repair or replacement it was directly related to and affected the existing interstate instrumentalities and traffic. If it was an extension, a part of the work necessary to be done was under the main line track and the manner of doing that particular portion of the work affected directly the physical condition and safety of that track and of the interstate commerce moving over it daily. The plaintiff was engaged in that particular portion of the work at the time of the accident. Under these facts and the law as laid down in the above controlling citations, we think the trial court ruled correctly that the plaintiff was, at the time of the accident, engaged in interstate commerce.

The judgment should be and is affirmed.