# TENNESSEE CENTRAL RAILWAY COMPANY v. ALEX SCARBROUGH.

Middle Section. December 21, 1928.

Petition for Certiorari denied by Supreme Court, April 13, 1929.

Holladay & Holladay, of Cookeville, for plaintiff in error.

Worth Bryant and G. C. Whittaker, of Cookeville, for defendant in error.

DeWITT, J. On February 6, 1926, the plaintiff Alex Scarbrough, a section hand in the employment of the Railway Company was injured by a smoke stack falling upon him from a steam shovel or dirt moving machine operated by the Railway Company during the performance of the work of extending a spur track running almost parallel with and connecting with the main line of the railway. The Railway Company was engaged in interstate, as well as intrastate, transportation of passengers and freight. The spur track was what is known as a doubling spur used constantly for placing upon it cars of interstate trains while the other cars of the trains were drawn up a sharp grade of the main track, the engine then returning, backing upon the spur track being coupled with the cars thereon and then drawing them up the grade to where they were again coupled with the other cars. It is fairly inferable from the evidence that the purpose of the extension of the spur was to enable it to hold more cars, as longer trains might or would be hauled in interstate transportation. The land beyond the end of the spur track was being graded by filling and otherwise for the purpose of laying thereon ties and rails as an extension of the spur. The plaintiff was engaged in spreading with a shovel in proper places the dirt which was brought there by the steam shovel which was built on a car and operated with the engine on the track, as other trains. The steam shovel would go up the road, acquire a load of dirt, return to where it would dump the dirt about the spur and would sometimes run onto the spur track. In dumping the dirt from the steam shovel it was placed by the main line and the spur track and removed as fast as possible by the section hands to the proper places. At some point, while the plaintiff was close to the steam shovel, a piece of cylindrical sheet iron which had been fastened to the regular smoke stack of the steam shovel to make it longer and make it draw better, fell off and struck the plaintiff. The engine had pulled the steam shovel to a water tank and when it came back to run into the siding the extension of the stack fell as aforesaid. Although one witness testified that this occurred at a point about ninety feet from the end of the spur track, there is evidence that the plaintiff was injured about the end of the spur and in close proximity to the main line.

It is contended that the plaintiff thus was not engaged in interstate commerce within the meaning of the Federal Employers' Liability Act (April 22, 1908, 35 Stat. at L., 65, chapter 149, 8 Fed. Stat. Ann., 2nd Ed., page 1208, U. S. Comp. St., secs. 8567-8665), upon which this suit is predicated, for defect or insufficiency due to the negligence of the Railway Company in its equipment. If the plaintiff was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, other questions relating to pleading not being now considered, there is material evidence to sustain the verdict of the jury that the defendant Company was liable.

The determination of this question always depends upon the facts of the particular case under review. C. N. O. & T. P. R. Co. v. Morgan, 139 Tenn., 3, 201 S. W., 129. The test is, was the act so directly and immediately connected with interstate commerce transportation as substantially to form a part or a necessary incident thereof? N. Y. C. R. Co. v. Carr, 238 U. S., 260, 59 L. Ed., 1298. There must be an immediate connection between interstate commerce and the act or duty in course of performance at the time the injury occurred. Salmon v. Southern Railway Co., 133 Tenn., 230, 180 S. W., 167. In the last mentioned case it was said by Mr. Justice Neil that the decisions of the United States Supreme Court seemed to show a progressive tendency towards requiring a closer connection with some act of interstate commerce, or with the early repairing of some interstate agency; that a lax construction would soon flood the docket of the Supreme Court with a vast number of cases from the State Supreme Courts and unduly curtail the operation of the laws of the several states, as regards actions to recover damages for injury or death caused by some wrongful act. See also Clements v. N., C. & St. L. Railway, 1 Tenn. App., 47. But the decisions of the U. S. Supreme Court and of many inferior federal courts are to the effect that such work, if in the nature of repair or replacement, or in such close proximity to instrumentalities of interstate commerce that they may be affected by the work done, constitutes interstate commerce, while purely new construction does not. Kinzell v. C., M. St. P. Ry. Co., 250 U. S., 130, 39 S. Ct., 412, 63 L. Ed., 893; N. Y. Central R. R. Co. v. White, 243 U. S., 188, 37 S. Ct., 247, 61 L. Ed.,667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; C., B. & Q. R. R. Co. v. Harrington, 241 U. S., 177, 36 S. Ct., 517, 60 L. Ed., 941; Pedersen v. D., L. & W. R. R. Co., 229 U. S., 146, 33 S. Ct., 648, 57 L. Ed., 1125, Ann. Cas. 1914C, 153; Bravis v. C., M. & St. P. Ry. Co., 217 Fed., 234, 133 C. C. A., 228. Also see So. Ry. Co. v. McGuin, 240 Fed., 649, 153 C. C. A., 447 (4th Cir.); P. B. & W. R. R. Co. v. McConnell, 228 Fed., 263, 142 C. C. A., 555 (3rd Cir.)

and C. & P. S. Ry. Co. v. Sauter, 223 F., 604, 139 C. C. A., 150 (9th Cir.).

A distinction is made where the thing being worked on was not yet in use as an instrumentality of interstate commerce, the work being done in mere preparation or construction of road beds, rails, ties, cars, engines and other instrumentalities which are intended for use in interstate commerce but have never been so used. Raymond v. C., M. & St. P. Ry. Co., 243 U. S., 43, 61 L. Ed., 583; Bravis v. C., M. & St. P. Railway Co., supra. But where the work of man and machinery is required to enable interstate transportation to be carried on to the extent of the demand then imposed upon the Railway Company, and is so immediately necessary thereto and in such close relation to the interstate railway line, as is shown in this case, it must be concluded that the employee was engaged in interstate commerce within the meaning of the Act. This principle was applied by the Supreme Court of the United States in Kinzell v. Chicago, M. & St. P. R. Co., supra, where a railway employee injured in the course of his employment on the work of constructing an earth fill to take the place of a wooden trestle over which interstate trains were passing, the fill having reached the stage where it required the work of men and machinery to keep the interstate tracks clear during further construction, was held to be employed in interstate commerce at the time he was injured. The court said that it was settled that the doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce within the meaning of the Act—citing N. Y. C. & H. R. R. Co., v. Carr, supra; L. & N. R. Co. v. Parker, 242 U. S., 13, 61 L. Ed., 119; Pecos & N. T. R. Co. v. Rosenbloom, 240 U. S., 439, 6 L. Ed., 730; S. Ry. Co. v. Puckett, 244 U. S., 571, 61 L. Ed., 1321, Ann. Cas. 1918B, 69. Other cases apposite are S. Ry. Co. v. McGuin, 240 Fed., 649; Columbia P. S. R. Co. v. Sauter, 223 Fed., 604; Oregon Short Line R. Co. v. Gubler, 9 Fed., (2nd) 494; Jones v. C. & O. R. Co., 149 Ky., 566, 149 S. W., 951.

Applying the test of direct and immediate connection, and in view of the close analogies presented by the cases cited, this court is of the opinion that the jury was warranted in finding that the plaintiff was employed in interstate commerce within the meaning of the Federal Employers' Liability Act at the time of his injury.

The jury returned a verdict in the following form, "We find a verdict of guilty and give the plaintiff $1000 damages." Thereupon the trial judge said:

"Mr. Foreman, I will ask you if you mean to say that you find the issues in favor of the plaintiff," to which he replied, "Yes sir." and the court then asked, "and fix and assess his damages at $1000?", to which he replied, "Yes sir."

We do not think that the verdict at first rendered was substantially in improper form; neither do we think that it was error for the trial judge to address these questions to the foreman of the jury. The jury plainly meant to say and did say that the defendant was liable to the plaintiff, that their verdict was in favor of the plaintiff and they stated plainly that they awarded the plaintiff $1000. It was proper for the trial judge thus to mold the verdict into the regular legal form. Kennel v. Muncey, Peck, 273. It is well settled that although a verdict may be defective in form, if is substantially finds the question in issue in such a way as will enable the court intelligently to pronounce judgment thereon for one or the other party, according to the manifest intention of the jury, it is sufficiently certain. 27 R. C. L., 858, and cases there cited.

Upon the hearing of the motion for new trial the defendant's counsel stated to the court that he could show by members of the jury that they had all agreed to allow $500 as damages, when one of the jurors stated that the lawyers would get fifty per cent of the amount allowed as damages and he would never agree to return a verdict for less than $1000, and that then they all agreed to a verdict of $1000. It should be stated here that this shows that the jury were not unanimous in allowing $500 but that one juror said that he would not agree to a verdict for less than $1000. Defendant's counsel asked to be permitted to examine some members of the jury for the purpose of showing that these things occurred; whereupon the court ruled that such testimony was incompetent, and this as well as the other grounds of the motion was overruled. No affidavit of any juror was offered in support of this ground of the motion, thus neither the trial judge nor this court has had any evidence before it upon which such ground for new trial could be considered. It does not appear that any juror had been summoned to give oral testimony before the trial judge. A new trial will not be granted upon hearsay evidence of misconduct of any juror. Stone v. State, 4 Humph., 27. There was no error in overruling this ground of motion for a new trial.

Upon the trial the defendant sought to introduce a letter written by plaintiff's attorney to the claim agent of the Railway Company on February 21, 1927 offering to accept the sum of $50 in full settlement of his claim for damages. Upon exception the introduction of this letter was not permitted. It is insisted that the letter was admissible as bearing upon plaintiff's good faith suing for the sum of $2000; that it was competent evidence to show that he did not consider himself to have been seriously injured. But this letter was in the nature of an offer of a compromise of the claim and therefore the trial judge did not err in excluding it.

It is insisted that the verdict and judgment for $1000 are so excessive as to indicate passion, prejudice and caprice. In actions for personal injuries it is always the duty of the jury in the first instance to determine the amount of compensatory damages it will allow; and the court is authorized to interfere on the ground of excessiveness only when the allowance is so much as to evince passion, prejudice, partiality, caprice or corruption on the part of the jury. Tennessee Coal, etc., Co. v. Roddy, 85 Tenn., 400, 5 S. W., 286; American Lead Pencil Co. v. Davis, 108 Tenn., 251, 66 S. W., 1129; Packet Co. v. Hobbs, 105 Tenn., 30, 58 S. W., 278. The trial judge saw the plaintiff and heard his injuries described. The law commits the amount of just compensation to the jury. The trial judge has approved the award of $1000. The plaintiff was thirty-six years old, of good physique and previous to this accident had been in good health and constantly engaged as a laborer. He had been earning as a section hand $2.24 per day. There is evidence that since the injury occurred there has been a material change for the worse in his physical condition, that he has not been able to follow his usual occupation; that during much of the time he has earned nothing and what he did earn was much less than that earned previous to the injury. The portion of the smoke stack which fell struck him on the head and shoulders. It fell a distance of about twelve feet. There is evidence that it weighed about seventy-five pounds. He was in a stooping position when he was struck. At first he did not believe or at least he hoped that he was not seriously injured, but soon afterward he noticed the effect of it on his body, and in a short while he began to suffer much pain. His shoulders have come to be stiff and to some extent he has lost the use of his arms. There is evidence showing an attack upon the plaintiff on the ground that he is endeavoring to perpetrate a fraud upon the Railway Company, that he would not avail himself of the services of the company's physician, and that he did considerable work for sometime after the injury. But there is also evidence of substantial injuries and the jury has believed this testimony. We must look to this alone and disregard the countervailing evidence. Under all these facts we cannot substitute our judgment for that of the jury as to the amount of damages to which the plaintiff is entitled and too, when the award of the jury has been approved by the trial judge.

This action was instituted more than one year after the injury occurred and the original declaration filed was not predicated upon the Federal Statutes; but within two years after the injury occurred the declaration was amended by the addition of averments bringing the case within the Federal Statutes. Upon motion the trial judge by peremptory instructions eliminated any and all of

the action which was based upon the common law. However, the declaration as amended brought the case within the Federal Statutes and the plea of the statute of limitation interposed by the defendant was properly overruled

It results that there is no error in the judgment of the circuit court and it is affirmed. Judgment will be entered in this court in favor of the defendant in error against the plaintiff in error for the sum of $1000, with interest from the date of the judgment in the circuit court, and all costs of this cause. The costs of the appeal will be adjudged against the plaintiff in error and the sureties on its appeal bond.

Faw, P. J., and Crownover, J., concur.