[Sac. No. 2926.   In Bank.—August 26, 1919.]

BANK OF LOS BANOS (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, etc., Respondent.

[1] WORKMEN'S COMPENSATION ACT — CARRYING OF SELF-INSURANCE BY LARGE CORPORATION—REQUIREMENT OF BOND OR SECURITIES—DISCRETION OF COMMISSION NOT ABUSED.—The action of the Industrial Accident Commission in requiring a large corporation engaged in very extensive business operations of many sorts and employing many persons to file a bond in the sum of twenty thousand dollars, or to deposit securities of that value as a prerequisite to the carrying of its own compensation insurance, was not an abuse of discretion, notwithstanding the corporation had many millions of dollars surplus and was amply able to self-insure, since its solvency is not the only matter involved, and the highest purpose of the workmen's compensation statutes is not merely to obtain payment of just claims, but to have such demands promptly adjudicated and paid in such way as to be available to the injured employees when most needed.

APPLICATION for Certiorari to review the action of the Industrial Accident Commission in requiring a corporation to file a bond or deposit securities as a prerequisite to carrying own compensation insurance.   Order to show cause discharged.

The facts are stated in the opinion of the court.

Edward F. Treadwell for Petitioners.

A. E. Graupner and W. H. Pillsbury for Respondent.

MELVIN, J.—Application was made for *certiorari* to review the action of the Industrial Accident Commission in requiring of Miller & Lux Incorporated (a corporation) the filing of a bond in the sum of twenty thousand dollars, or the depositing of securities of that value, as a prerequisite to the carrying of its own compensation insurance by the corporation.   The other petitioners are corporations, and are companies subsidiary to Miller & Lux Inc.   Upon filing of the petition an order to show cause was made.

All of the petitioners asked permission to demonstrate their ability to self-insure. Their applications were heard, and the counsel for the Industrial Accident Commission wrote to counsel for petitioners a letter containing, among other things, the following language:

"The commission notes that Miller & Lux Incorporated has listed among its assets 'United States Liberty Bonds' (First and second issues) $28,000.

"If you will deposit $20,000 of the 'Liberty Bonds' listed by you in the manner and form prescribed by the Commission, certificate of consent to self-insure will be issued to Miller & Lux Incorporated, and that company will be acceptable to the Industrial Accident Commission as the surety for the San Joaquin & Kings River Canal & Irrigation Co., West San Joaquin Valley Water Co., Bank of Gustine and Bank of Los Banos."

The showing made by Miller & Lux Inc., before the Industrial Accident Commission, indicates that it has many millions of dollars surplus and that it is amply able to self-insure. The petitioners contend that solvent employers having assets commensurate with the hazard, should be permitted to self-insure without the deposit of security or the giving of a surety bond and that the exacting of such security or bond as prerequisite to permission for petitioners to self-insure amounts to an abuse of discretion on the part of respondent.

Petitioners first attack the action of respondent on the ground that it is based upon an arbitrary rule applied to all corporations or others seeking self-insurance and not upon any real investigation of the merits of these particular requests. The letter of the counsel for the Industrial Accident Commission indicates, however, that there was some consideration of the facts, both of solvency and of corporate association, because, instead of demanding a bond or a deposit from each petitioning corporation, the commission was willing to allow Miller & Lux Inc. to carry the insurance for itself and its subsidiary corporations.

We must decide, therefore, whether or not any bond or deposit may be required, and if that question be answered in the affirmative, whether or not the amount (twenty thousand dollars) is reasonable, under all the circumstances.

By the Workmen's Compensation Act of 1917 (Stats. 1917, p. 831), it is provided (page 857) that "Every employer as

defined in section seven hereof, except the state and all political subdivisions or institutions thereof, shall secure the payment of compensation in one or more of the following ways:

"1. By insuring and keeping insured against liability to pay compensation in one or more insurance carriers duly authorized to write compensation insurance in this state.

"2. By securing from the commission a certificate of consent to self-insure, which may be given upon his furnishing proof satisfactory to the commission of ability to carry his own insurance and pay any compensation that may become due to his employees. The commission may, in its discretion, require such employer to deposit with the state treasurer a bond or securities approved by the commission, in an amount to be determined by the commission. Such certificate may be revoked at any time for good cause shown."

Petitioners insist that the commission may require the bond or securities specified in the statute when there is any reasonable doubt of the employer's ability to carry his own insurance, but that where no such doubt exists, the commission must grant the certificate of consent without the giving by the applicant of any security. There might be some force in this position if solvency of the petitioning employer were the only matter involved, but the highest purpose of the workmen's compensation statutes is not merely to obtain *payment* of just claims, but to have such demands promptly adjudicated and paid in such way as to be available to the injured employees when most needed. Any corporation, no matter how rich, may be subject to lawsuits, and it is easily conceivable that all the funds of a given corporation might be held by injunction, or other order of court, in such manner as not to be immediately available for settlement of awards of compensation found by the Industrial Accident Commission. It is, therefore, highly desirable that a proper fund or bond be provided and that such security be under the control of the Industrial Accident Commission. The requirement of security is also justified by the fact that payments of compensation sometimes extend over long periods of time. A corporation solvent at the time it may secure permission to carry its own compensation insurance may have many changes in its financial status during the years of its obligation to pay persons who may be injured while in its service. The fund, or bond, authorized by the statute not only keeps safe the installments

of indemnity due from time to time to the injured employees, but it makes unnecessary the otherwise constant watchfulness of the Industrial Accident Commission over the possibly diminishing resources of the self-insurer.

Upon this phase of the discussion we are constrained to quote some of the language of Mr. Justice Pitney, who delivered the opinion of the supreme court of the United States in the case of *New York Central R. R. Co.* v. *White,* 243 U. S. 188, [Ann. Cas. 1917D, 629, L. R. A. 1917D, 1, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247]. To be sure, the exact question here under discussion was not there involved. Nevertheless, the observations of the learned justice, made while expressing the court's opinion, are quite pertinent. At page 208 of the report [243 U. S.] we find the following language:

"We conclude that the prescribed scheme of compulsory compensation is not repugnant to the provisions of the Fourteenth Amendment, and are brought to consider, next, the manner in which the employer is required to secure payment of the compensation. By Sec. 50, this may be done in one of three ways: (a) state insurance, (b) insurance with an authorized insurance corporation or association, or (c) by a deposit of securities. The record shows that the predecessor of plaintiff in error chose the third method, and, with the sanction of the commission, deposited securities to the amount of $300,000, under Sec. 50, and $30,000 in cash as a deposit to secure prompt and convenient payment, under Sec. 25, with an agreement to make a further deposit if required. This was accompanied with a reservation of all contentions as to the invalidity of the act, and had not the effect of preventing plaintiff in error from raising the questions we have discussed.

"The system of compulsory compensation having been found to be within the power of the state, it is within the limits of permissible regulation, in aid of the system, to require the employer to furnish satisfactory proof of his financial ability to pay the compensation, and to deposit a reasonable amount of securities for that purpose. The third clause of Sec. 50 has not been, and presumably will not be, construed so as to give an unbridled discretion to the commission; nor is it to be presumed that solvent employers will be prevented from becoming self-insurers on reasonable terms. No question is made but that the terms imposed upon this railroad

company were reasonable in view of the magnitude of its operations, the number of its employees, and the amount of its payroll (about $50,000,000 annually); hence no criticism of the practical effect of the third clause is suggested.''

Section 50 of the New York act of 1914, (chap. 41, Laws of 1914) is substantially the same as our own statute with reference to self-insurance.

Undoubtedly, following the suggestion set forth above, this court would not so construe the statute as to give ''unbridled discretion to the commission.'' We cannot say, however, from the record before us, that the Industrial Accident Commission abused its discretion when acting upon the applications of these petitioners. This record discloses the fact that petitioners are engaged in very extensive business operations of many sorts. These activities are only made possible by the employment of many persons. It is not improbable that casualties may occur within the near future and we cannot justly say that the security demanded is disproportionate to the reasonable probability that such unfortunate happenings may be more than a few. Payments of compensation usually extend over a considerable period of time, being frequently made weekly for 240 weeks. The liability of the employer is, therefore, cumulative, and may increase from year to year. As counsel for respondent well say: ''If an employer had one maximum liability a year for five years, he would, during the fifth year, be paying upon all five injuries, and his total liability to all claimants during that year would be in the neighborhood of twenty thousand dollars, without allowance for any further injuries occurring in that year.''

[1] In view of the magnitude of the business of petitioners, and the probability of frequent injuries to their employees, we cannot say that this record reveals an abuse of discretion on the part of the Industrial Accident Commission.

The order to show cause is discharged.

Shaw, J., Lawlor, J., Olney, J., Wilbur, J., Lennon, J., and Angellotti, C. J., concurred.