Johnson, J.
The decisive question is whether the facts, which are substantially undisputed, bring the case within the Workmen’s Compensation Law. Was the defendant in error injured “in the course of his employment,” within its meaning?
There has been divergence of judicial decision concerning the scope of the quoted phrase and its application to different circumstances.
The Ohio law was passed pursuant to Section 35, Article II of the Constitution adopted in September, 1912, pertinent parts of which are as follows: “For the purpose of providing compensation to workmen * * * for injuries * * * occasioned in, the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers * * *. Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification.”
*4 The act now in force, under which defendant in error claims (103 O. L., 72-92), was passed pursuant to the grant of power contained in the above provision of the constitution, and provides (Section 1465-68, General Code) for compensation to “every employe * * * who is injured * * * in the course of employment.”
The act was in effect an amendment of the act of May 31, 1911 (102 O. L., 524-548), which provided for the establishment of a state insurance fund from premiums paid by employers and employes in the manner prescribed in the act. The validity of the earlier statute was upheld by this court, and the general scheme of the law, with the provisions for the establishment and disbursement of the insurance fund, was sustained as a valid exercise of the police power by the legislature. It was pointed out in the decision that the act was not compulsory. State, ex rel. Yaple, v. Creamer, Treas. of State, 85 Ohio St., 349.
After this decision, Section 35, Article II, was adopted as an amendment to the constitution. It is evident that the paramount purpose of the amendment was to leave no doubt as to the power of the legislature to pass a compulsory act for the establishment of an insurance fund to be administered by the state, to which fund employers should be compelled to contribute without regard to any fault or neglect on their part.
These successive advanced steps expressed the growth of public sentiment. It came to be believed that employes should receive compensation for injuries received in the course of their employment, *5 unless the injury was caused by the wilful neglect of the employe; that upon just and scientific considerations such injuries should be regarded as a charge upon the business upon which the employes are engaged. This principle and the position in the line of causation which employers and their enterprises sustain in industrial pursuits are the foundations upon which laws that compel employers to contribute to state compensation funds are based.
Legislation of this character has been finally sustained as within the police power by the supreme court of the United States in N. Y. C. Rd. Co. v. White, 243 U. S., 188; Mountain Timber Co. v. Washington, 243 U. S., 219, and Arizona Employers’ Liability Cases, 250 U. S., 400.
In these cases the essential considerations in favor of the employer, which are necessary to give validity to the legislation, are stated and found to be present; the quid pro quo for the burdens imposed on him.
The constitutionality of the Ohio statute was upheld in Fassig v. State, ex rel. Turner, Atty. Genl., 95 Ohio St., 232. In that case the employer of the injured employe had not contributed to the state insurance fund and had not been granted by the Industrial Commission the privilege to compensate directly his injured employes. The validity of Section 27 of the act, which relates to noncontributing employers, was attacked, and in argument against its validity it was contended that the phrase “in the course of employment” would permit an award to be made for an injury which had its cause *6 outside of and disconnected with the employment; that as this would compel employers to compensate for injuries with which neither they, nor their business, had any causal connection, and with which they had nothing whatever to do, it would be a taking of property without due process of law and a denial of the equal protection of the law as required by the state and federal constitutions.
In the argument of that case attention was called to another application for award which was then pending, or was soon to be pending. That application was for an injury caused by the rejected lover of an employe, who went to the factory where the employe was engaged “in the course of [her] employment,” and, having entered the factory, shot and wounded her. This was cited as showing unconstitutional results which would flow from the provisions of the statute. This court was of the opinion that the phrase in question was not intended to be given the extensive meaning which those opposing the validity of the law contended the language required; and the syllabus in the Fassig case included the proposition that such provisions do not cover any injury which has its cause outside of and disconnected with the employment. It will be noted that the language of the amended section of the constitution is “for injuries * * * occasioned in the course of such workmen’s employment.” The language of the statute is “every employe * * * who is injured * * * in the course of employment.” Of course the legislature would not have the power to make any broader provision than the constitution authorized it to make.
*7 Webster defines the word “occasion,” viz: “To give occasion to, to cause, to produce;” and the Century defines it: “To cause incidentally or indirectly; bring about or be the means of bringing about or producing.” The language of the constitution is “occasioned in the course of such workmen’s employment.”
The rule is familiar, that, where the language will permit, such construction will be given to a statute as will not render it obnoxious to the state or federal constitution.
We think it clear that the framers of the constitution intended to provide that the employment should have some causal connection, directly or incidentally, with the injury, either through its activities, its conditions or its environments.
The claim is not against the employer. It is solely against the insurance fund raised by the state. But nevertheless the fund is created by compulsory contribution of employers who are classified and rated as stated above.
We are likewise impressed that this law is intended to provide an inexpensive, humane remedy as a substitute for outworn and unsatisfactory methods, and it should be liberally construed in favor of employes.
Measured by these considerations, how stands this case? Were the employer and his enterprise in the line of causation? We think they were.
The claimant was in the plant of his employer proceeding to his machine in full compliance with his duty when he was injured. At the time he was engaged'both parties knew and understood the cir *8 cumstances and conditions necessarily a part of the factory life. One of the conditions is the presence of machinery, in repair or out of repair; the condition of the factory itself, in repair or out of repair; and another circumstance is the presence of other employes engaged in and about the plant. Every one realizes the ordinary risks that flow from the presence, of fellow-servants. All parties must be held to have contemplated the possibility of injury connected with that situation. The legislature contemplated it. The factory and machinery, and employes constitute one entire situation. The presence of the employe in a factory with other employes involves the hazard of injury from the machinery, the work itself, or the acts, negligent or not negligent, of other employes. If an employe, while a part of that situation, receives an injury as the result of an occurrence incidental to the conduct of the business, that injury was received in the course of his employment.
In the recent case of Leonbruno v. Champlain Silk Mills et al., 128 N. E. Rep., 711 (December 21, 1920), the court of appeals of New York says: “The risks of such associations and conditions were risks of the employment.”
In this case the scuffle for the file between the other employes was a thing not at all unlikely to occur. It was an event of the sort that is of frequent occurrence between workmen. It must be remembered that the claim or award is not based on any neglect or fault of the employer or of any of his employes. The injury in this case was caused by an occurrence occasioned in the environment, and *9 it was an injury “occasioned in the course of the employment” and because of the employment. See also Industrial Commission of Ohio v. Pora, 100 Ohio St., 218. An entirely different situation would exist if some outsider, a third person, not connected with the plant of the employer, or the business, were to step into the plant and shoot the employe because of á grievance wholly disconnected with the enterprise, and the same observation might be made if the employe himself should engage in something outside of and foreign to his employment. None of the grounds upon which injuries of employes are regarded as a charge upon the business would be present. It would not be an injury occasioned in the course of employment within the meaning of our statute.
For the reasons given the judgment in this case will be affirmed.

Judgment affirmed.

Wanamaker, Robinson, Jones and Matthias, JJ-, concur.
Marshall, C. J., and Hough, J., took no part in the consideration or decision of the case.