(No. 4897-

RICHARD L. WARD, II and ANN WARD, by JOAN S. WARD, their mother and next friend, and JOAN S. WARD, individually, Minor children and Surviving Spouse of RICHARD L. WARD, Deceased, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1962.*

JOHN E. CASSIDY, JR., Attorney for Claimants.

WILLIAM G. CLARK, Attorney General; MADALYN MAXWELL, Assistant Attorney General, for Respondent.

PERLIN, J.

On June 6, 1959, Richard L. Ward, age 30, who was a full-time member of the Illinois National Guard and a Commissioned Officer in the United States Air Force, was

killed in an aircraft accident, while in the line of duty and acting pursuant to orders from his Commander-in-Chief and superior officers. The accident occurred near the Greater Peoria Airport, Peoria County, Illinois, when a jet fighter plane, which Ward was flying, failed to gain altitude on take-off, crashed and burned.

Surviving the deceased were his wife, Joan S. Ward, age 31; his daughter, Ann J. Ward, age 3, who was born August 3, 1956; and his son, Richard L. Ward, II, age 4 months, who was born on March 11, 1959. Said survivors are the claimants in this proceeding.

Although this case was commenced under Ill. Rev. Stats., Chap. 129, Sec. 143, that section was changed in 1957 to Ill. Rev. Stats., Chap. 129, Sec. 220.53 (1957), which provides as follows:

"When officers, warrant officers or enlisted personnel of the Illinois National Guard or Illinois Naval Militia are injured, wounded or killed while performing duty in pursuance of orders from the Commander-in-Chief, said personnel or their heirs or dependents, shall have a claim against the State for financial help or assistance, and the State Court of Claims shall act on and adjust the same as the merits of each case may demand."

The provisions of former Sec. 143 and current Sec. 220.53 are substantially similar, and the arguments of the parties in this case are applicable to the new as well as the old statutory sections.

The only question presented in this proceeding is the amount of compensation, which should be awarded.

At the time of his death, the deceased was a full-time, salaried member of the Illinois National Guard. He held the rank of Captain, and received a salary of approximately $800.00 per month. His earnings for the year 1958 were $9,071.86, and, for 1959, until his death in June, his earnings were $5,147.01. He was the sole means of support of his wife and children.

The deceased held several life insurance policies, including two which secured a Real Estate Mortgage,

having an unpaid balance of $16,400.00. Most of these policies denied all or part recovery in the event death occurred while operating an aircraft. Claimants allege that the full amount of all policies totalled $36,000.00, and that, since Mrs. Ward received only $7,240.00 of this amount, a base figure in computing her award should be the $29,359.10, which she did not receive because of the "Aircraft Exclusion" clauses.

Claimants further urge that, on the basis of estimated minimum expenses of Mrs. Ward and the two children, Mrs. Ward should be awarded $55,000.00, with Ann and Richard receiving respectively $9,000.00 and $12,600.00, for a sum total of $76,600.00.

The widow is currently receiving from Federal Funds monthly payments of $165.00 from the Veteran's Administration and $81.80 from Social Security benefits, while the children are receiving $136.40 per month from Social Security benefits, and will continue to do so until they reach 18 years of age, for a total monthly income of $383.20.

Claimants contend that their request for $76,600.00 is allowable under the Statute because of the holdings in Military and Naval Code cases, such as *Dudley* vs. *State of Illinois*, 21 C.C.R. 225, 258, that this Court has "not considered the Workmen's Compensation Act to be either a ceiling or floor under our awards." They further cite the following language in the *Dudley* case as justification for the amounts claimed:

"One of the primary purposes of both Public Law 108 and the applicable section of the Military and Naval Code is to render more attractive to potential members service in the National Guard, and to afford protection to members thereof in activities, which concededly are often extremely dangerous. In other words, both statutes serve as stimulants to voluntary military service, which service is of the utmost importance to the safety, welfare and protection of the Nation and the State."

It should be noted, in enunciating this principle of public policy, the Court was merely setting forth reasons as to why Federal benefits should not preclude State payments.

Respondent argues that, as a matter of public policy, benefits payable to a National Guardsman, or his dependents, should not greatly exceed benefits paid to dependents of others, who serve their government equally faithfully in different capacities, since it is as important to the State to encourage the employment and retention in service of competent dedicated persons in the civil aspects of government as it is in the military, and discrimination in the awarding of benefits to the two such classes of persons would have an inevitable ill effect.

Respondent further urges that the maximum amount of recovery should be not more than that expressed in the Illinois Court of Claims Act section on tort liability or of Sec. 138.7 of the Workmen's Compensation Act.

In arriving at the amount of awards arising out of the death or injury of Illinois National Guardsmen, the Court of Claims has often used the Workmen's Compensation Act as a guide. Cases in which the Act was so used include the following:

*Williams* vs. *State of Illinois,* 4 C.C.R. 209; *Tranchita, Et Al,* vs. *State of Illinois,* 10 C.C.R. 535; *Hall* vs. *State of Illinois,* 12 C.C.R. 464; *Quigley* vs. *State of Illinois,* 17 C.C.R. 27; *Falls* vs. *State of Illinois,* 21 C.C.R. 229; *Brown* vs. *State of Illinois,* 21 C.C.R. 409; and *Sypniewski* vs. *State of Illinois,* 21 C.C.R. 586.

In *Tranchita, Et Al,* vs. *State of Illinois,* 10 C.C.R. 535, where a member of the Illinois National Guard, while in the line of duty, received personal injuries resulting in his death, the Court held:

"No hard and fast rule exists for determining what amount should be allowed. In certain of these cases the Court has seen fit to take as a guide,

233

but not as a fixed rule, the provisions of the Illinois Workmen's Compensation Act in determining what payment would be reasonable and customary for the loss sustained."

The Court then allowed recovery by calculating how much would be allowed had the deceased been an ordinary State employee, limited to recovery under the Workmen's Compensation Act.

It is the opinion of this Court that, while the section of the statute under which recovery is here sought appears to impose no maximum amount on its face, the Legislature adopted this provision as remedial legislation, and did not intend that it be applied without equal standards or reasonable limitation of amount.

Section 220.53, under which this action is pursued, provides that financial help or assistance will be allowed to personnel, or their heirs or dependents, if death or injury occurs while performing duty in pursuance of orders from the Commander-in-Chief. This requirement is nearly identical in practice to the Workmen's Compensation standard, which allows compensation for injury or death if "suffered in the course of employment within this State" (Ill. Rev. Stats., Chap. 48, Sec. 138). In neither instance is it required that the employee, or his successors in interest, prove that he was free from wrongdoing, and that the employer or the State is a tort feasor or wrongdoer. The comprehensive liability imposed by the Workmen's Compensation Act is discussed by the Illinois Supreme Court in *Decatur Ry. Co.* vs. *Industrial Bd.*, 276 Ill. 472, 474, where the Court states:

"The liability imposed by the Workmen's Compensation Act has no connection with the negligence of either the employer or the employee. An injury arising out of and in the course of employment creates the liability without any question of fault on the part of either the employer or the employee."

The intent of Workmen's Compensation legislation is to provide practically automatic and certain relief to

an injured employee upon mere proof that the injury arose in the course of covered employment within the State. This precludes the doubtful contest for recovery, which the employee would face under common law, wherein such recovery would require proof of the employer's negligence, plus a negation of the defense of contributory negligence, assumed risk, and the fellow servant doctrine. Similarly, Sec. 220.53 of the Military and Naval Code makes recovery for injuries or death suffered in the line of duty almost certain.

However, it has long been recognized that a fundamental purpose of the Workmen's Compensation statutes is "to provide not only for employees a remedy, which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinate." (*Bradford Electric Light Co.* vs. *Clapper*, 286 U.S. 145, 76 L. Ed. 1026, 52 S. Ct. 571, 82 A.L.R. 696.)

In the landmark case of *New York Central Railroad Co.* vs. *White*, 243 U.S. 188, 37 S. Ct. 247, 61 L. Ed. 667, the United States Supreme Court upheld the constitutionality of the New York Workmen's Compensation statute, and declared:

"If the employee is no longer able to recover as much as before in case of being injured through the employer's negligence, he is entitled to moderate compensation in all cases of injury, and has a certain and speedy remedy without the difficulty and expense of establishing negligence or proving the amount of the damages. Instead of assuming the entire consequences of all ordinary risks of the occupation, he assumes the consequences in excess of the scheduled compensation of risks, ordinary and extraordinary.

"On the other hand, *if the employer is left without defense respecting the question of fault, he at the same time is assured the recovery is limited, and that it goes directly to the relief of the designated beneficiary.*" (Emphasis supplied.)

For the foregoing reasons, liability without fault must be necessarily limited to protect the State of Illinois from the astronomical claims, which might be urged by claimants under the Military and Naval Code, just as the

State is protected from injury claims by ordinary State employees under the Workmen's Compensation Act.

Because of the absence of requirements showing either freedom from contributory negligence on the part of claimant or negligence on the part of the State, there is no basis for treating injury cases arising under the Military and Naval Code as ordinary tort actions subject to the ad damnum provisions of the Court of Claims Act, Ill. Rev. Stats., Chap. 37, Sec. 439.8 (D).

We recognize that there have been a few instances where this Court did not follow its general practice of using the Workmen's Compensation Act as a gauge to the amount of recovery allowed in personal injury and death cases under the Military and Naval Code, as in the *Dudley* case, cited above, and *Roberts* vs. *State of Illinois,* 21 C.C.R. 406. We find, however, that recovery based on established standards is essential to the dispensing of equal justice.

We shall henceforth allow claimants in personal injury or death cases brought pursuant to the Military and Naval Code, Sec. 220.53, and similar provisions, to recover an amount no greater than the maximum prescribed for similar claims under the Workmen's Compensation Act in effect in the State of Illinois at the time the injuries were incurred. We are cognizant that in most cases the Federal Government has made substantial payments to the injured person and his survivor. In determining the extent of aid to be contributed by the State, we will disregard any payments from the Federal Government or other sources.

The ruling of the Court herein does not conflict with the decision of the Supreme Court in *Hays* vs. *Illinois Transportation Co.,* 363 Ill. 397, which held that the Workmen's Compensation Act does not apply to those

in military service, since the Compensation Act is only being used as a guide in determining the extent of our awards, and the cases acknowledgedly arise under the Military and Naval Code.

The applicable provisions under the Workmen's Compensation act in effect, when the accident in question occurred on June 6, 1959, were as follows:

"(Ill. Rev. Stats., Chap. 48, Sec. 138.7)

"Sec. 7. The amount of compensation which shall be paid for an accidental injury to the employee resulting in death shall be:

(a) If the employee leaves any widow, child or children whom he was under legal obligation to support at the time of his accident, a sum equal to 9.25 times the average earnings of the employee, but not less in any event than $7,500 and not more in any event than $10,750.

. . . . . .

3. Whenever in paragraph (a) of this Section a maximum of $10,750 is provided, such maximum shall be increased in the following amounts:

. . . . . .

$12,000 in the case of 2 such children ('such children' refers to unemancipated children of the deceased under the age of 18 years)."

It is the opinion of this Court, therefore, that claimants shall be awarded the sum of $12,000.00.