CORNELIO A. MORALES, Plaintiff and Appellant, *v.* LUIS LIZARRIBAR and EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, Defendants and Appellees.

No. R-70-357.     Decided May 18, 1972.

*Benicio Sánchez Castaño, Felipe Benicio Sánchez Rivera, Benicio Sánchez Rivera* for appellant. *Rieckehoff, Calderón, Vargas & Arroyo* for appellees. *Jorge J. Oppenheimer Méndez, Elba Canales Mattini,* and *Edwin A. Hernández Rodríguez* for amicus curiae, Automobile Accident Compensation Administration.

MR. JUSTICE MARTÍNEZ MUÑOZ delivered the opinion of the Court.

In the year 1968 our Legislature approved the Automobile Accident Social Protection Act. One of the most serious problems bearing down on the Puerto Rican society is the high incidence of motor vehicle accidents which occur in the country every year: 59,556 in 1969–70, according to the Annual Report of the Police of Puerto Rico. The density of population is one of the highest in the world. For lack of other means, the inland transportation of persons and products is carried out almost exclusively by the use of automobiles, trucks, and buses. The congestion of vehicular traffic is an experience we live every day. The report on "Transportation" submitted on June 2, 1970, to the Governor of Puerto Rico by the Advisory Council for the Development of Government Programs foretells that by the year 1986 the overland traffic will total 8.1 billions of vehicular miles, almost twice the 4.3 billions of the year 1967.

The magnitude of traffic accidents due to these and other factors is a sad reality, it being more difficult, slower, and costlier every day to obtain alleviation in terms of economic compensation for the loss of lives, personal injuries, pain, and human sufferings of the victim and his relatives by utilizing the traditional mechanism of court action. During the year 1968–69, 571 persons died and 23,110 were injured in traffic accidents. It may be affirmed that a substantial number of the vehicles involved were not insured. According to the data furnished by the office of the Commissioner of Insurance, for the year 1969 only 97,000 commercial and private vehicles were insured. For said year there were 538,000

registered motor vehicles in the Island. Frequently, the persons who cause accidents lack the economic means to answer therefor, and hence, for a large number of the victims their right to compensation is illusory. Even when the tort-feasors are solvent, the judicial prosecution against them to obtain any compensation is long and costly in the majority of the cases.

Act No. 138 of June 26, 1968,[1] is an endeavor of our Legislature to mitigate that sad reality. In the Report of the Joint Commission of the House of Representatives which proposed House Bill No. 874 which later on became Act No. 138, it is stated:

"As a result of the increasing incidence of accidents, the number of traffic-accident victims has been increasing every year in Puerto Rico at a rate which constitutes a motive of great concern for our society. Even though these victims can avail themselves of the judicial remedy to file suit against the tort-feasor, the latter frequently lacks economic means to answer for damages. This is very common in Puerto Rico, where the majority of the drivers are insolvent or are not insured.

"On the other hand, the judicial procedure to be followed to obtain compensation is long and costly, and sometimes it takes years for the victim, if he can establish defendant's negligence, to obtain judgment in his favor. After obtaining said judgment there remains to be done the arduous and often futile task of collecting the same from an insolvent and uninsured person.

"This situation, which already has the category of a social problem, is the background on which the measure under consideration has been planned." 22 *Diario de Sesiones* 1041 (1968).

This appeal involves one of the most contended aspects of the Automobile Accident Social Protection Act: the provision contained in its § 8 (9 L.P.R.A. § 2058) which grants de-

---

[1] 9 L.P.R.A. §§ 2051–2065. In view of the interest that the Automobile Accident Compensation Administration could have in the construction of this law, the Court invited it to appear in this appeal as amicus curiae. Said agency filed its report at the proper time.

fendants, in judicial actions for damages resulting from automobile accidents, a deduction of $1,000 for the physical and mental sufferings of the victim.

There is no controversy as to the facts. This is an action brought by appellant against appellee and his insurance company for physical damages and mental sufferings allegedly sustained when he was hit, on April 3, 1970, by an automobile driven by appellee. Defendants admitted the allegation of negligence contained in the complaint. According to the stipulation of the parties plaintiff suffered "hematomas, contusions, and abrasions on his body and physical and mental sufferings." These damages were estimated, by stipulation of the parties, in the amount of $1,500. The term of an insurance policy issued by the other defendant, covering the risk of accidents like the one alleged herein, was also stipulated, said policy being subject to a condition according to which its coverage does not include automobile accidents which have occurred in Puerto Rico unless the damages for physical and mental sufferings exceed $1,000 and $2,000 for other damages, if the tort-feasor is exempt from legal liability by the Automobile Accident Social Protection Act of Puerto Rico.[2]

The trial court, relying on the stipulation of facts and the provisions in § 8(3)(b) of Act No. 138, decided that defendants were entitled to the deduction of $1,000 for physical and mental sufferings granted by said act, and rendered judgment ordering defendants to pay plaintiff the excess of $500.

---

[2] This clause appears from the endorsement known as "Puerto Rico Amendatory Endorsement," which was attached to the record by motion signed by all the parties including the amicus curiae. The English text in its pertinent part reads:

". . . but this limitation shall apply only to the extent that the person or organization responsible for such injury is exempt from legal liability with respect thereto by reason of the Puerto Rico 'Automobile Accident Social Protection Act.'"

Appellant maintains that, contrary to the decision of the Superior Court, Act No. 138 does not grant the tort-feasor such exemption, but that, even though the latter existed, the same would only be for the benefit of the tort-feasor and not for the insurance company which cannot profit from the personal defenses of its insured. He maintains that, in any event, the law would be unconstitutional if it were understood that it grants such exemption to the tort-feasor, because it deprives the victim of his property without due process of law.

I

Does Act No. 138 grant the $1,000 deduction claimed by defendants? Among the recent laws enacted in different states, which have tried to reform, like Act No. 138, the system of automobile accident compensation, there are several which contain limitations to the right to compensation for physical and mental sufferings: General Laws of Massachusetts, Chapter 231, § 6D; Florida: West's Fla. Session Law Service, Chapter 71-252, § 8; Illinois Insurance Code, Art. XXXV, § 608. This kind of limitation is also found in many of the plans which have arisen in recent years as models for this kind of reform: Keeton-O'Connell Plan, Hart-Magnuson Bill in Congress, American Insurance Association Plan, National Association of Independent Insurers Plan, American Mutual Insurance Alliance Plan, New York State Insurance Department Plan, Cotter Plan, Woodroof-Squillante Plan, Connecticut Association of Independent Insurance Agents Plan, Gordon Plan.[3] The majority of these propositions limit, in a greater degree than Act No. 138, the right to recover in tort for sufferings.[4]

---

[3] Rokes, *No-fault Insurance*, Chapters VI, VII, VIII, 1971, Insurors Press, Inc., Santa Mónica, California.

[4] A system frequently proposed and adopted in Massachusetts consists in granting damages for sufferings not in excess of the medical

Section 8 of Act No. 138, 9 L.P.R.A. § 2058, provides the following:

"(1) The benefits provided by this chapter for injuries sustained as a result of automobile accidents which occurred in the Commonwealth of Puerto Rico shall be paid, up to the limits indicated in this section, in substitution of the sums that otherwise the victim would be entitled to claim under the principle of liability on the basis of tort, relieving the responsible party from the payment of all claims up to said limits or up to the amount of the benefits collected by the victim and his beneficiaries, whichever of the two is the higher.

"(2) Any person responsible, through a negligent act of his own, for damages or injuries for which benefits are provided herein, shall be exempted from the principle of liability on the basis of negligence. Said exemption shall not apply in those cases in which the loss recoverable by the victim on account of the injuries sustained exceeds:

(a) the amount of $1,000 for physical and mental sufferings including pain, humiliation, and similar damages, and of

(b) the sum of $2,000 by reason of other damages or losses not included in (a).

"(3) Any person whom a court may declare, in a civil action connected with the possession, maintenance or operation of a motor vehicle, guilty of having caused through negligence injuries for which a victim may be entitled to receive benefits of medical-surgical and hospital services under this chapter, shall be entitled to a deduction in the judgment imposed by the court up to the amount indicated in this section.

(a) In each case in which this section applies the court must separately indicate the amount of indemnity granted for damages due to pain and physical and mental sufferings and the amount of indemnity granted for other losses.

(b) The deduction applicable to damages for physical and mental sufferings shall be $1,000.

(c) The deduction applicable to damages and losses for causes other than physical and mental sufferings shall be the

expenses or, if the latter would amount to less than $500, not in excess of half of the medical expenses.

sum of $2,000 or the amount of the total benefits paid by the Administration, if said amount is greater than $2,000.

(d) The indemnity granted by a court to the survivors of the victim on account of moral damages sustained by the latter by reason of the death of said victim, shall be reduced by a sum equal to the amount of the benefits that the victim and his beneficiaries have received from the Administration.

(e) If the liability for the damages caused lie upon two or more persons, the deductions provided in this section shall be deducted only once. Same shall be deducted from the total judgment to be paid by all the parties. The court shall determine the amount of the deduction which shall apply to each one of said parties.

(f) The provisions of this section shall be applicable to the judgments rendered in claim actions brought in connection with accidents which have occurred on and from July 1, 1969."

Appellant argues that the language of the aforecopied provision necessarily implies that the application of the limits indicated in § 8 is conditioned to the effect that the law provide benefits in favor of the victim or his beneficiaries. In other words, that the person causing the accident can only avail himself of the deductions when the law itself grants benefits for the item sought to be deducted. This appears, appellant alleges, from that part of § 8 which states:

"The benefits provided by this chapter . . . shall be paid, up to the limits indicated in this section, *in substitution of the sums that otherwise the victim would be entitled to claim under the principle of liability on the basis of tort . . . .*" (Italics ours.)

■ We do not agree. Section 4 of the Act (9 L.P.R.A. § 2054) enumerates the *benefits* provided for traffic-accident victims. Medical-hospital services, payments for disability, for death, and for dismemberment are included. The law *does not* contemplate compensation for physical and mental sufferings. On the other hand, § 8 establishes a relief from liability for negligence in favor of the person who causes the accident for the items and to the limits indicated therein as *deductions*: (1) physical and mental sufferings, $1,000 and

(2) other damages and losses, $2,000 or the amount of the total benefits paid by the Administration, if said amount is greater than $2,000.

The deduction of $1,000 for mental sufferings is not conditioned merely to the case of those accident victims who have *received* the benefits provided by law, but it extends to those who, irrespective of whether they have availed themselves of or received the benefits of the system, "may be *entitled* to receive benefits of medical-surgical and hospital services . . ." under the same. In the case at bar the victim, appellant herein, suffered "hematomas, contusions, and abrasions on his body" as a result of an automobile accident. As such he could have claimed from the Automobile Accident Compensation Administration medical services, hospitalization and other benefits provided by law. 9 L.P.R.A. § 2054 (5).

■ We decide that the $1,000 exemption for the mental sufferings of the automobile-accident victim is automatic and benefits the person responsible for the accident.[5] The determination of the trial court in that sense is correct. Actually, the historical and legislative background of said legislation corroborates it. The Report of the Joint Commission of the House of Representatives which proposed House Bill 874 and which later on became Act No. 138 states:

"B. House Bill 874 contemplates the payment of the benefits provided in the same, and up to its limits, as sums payable in substitution of those which otherwise the victim would be entitled to claim under the principle of liability on the basis of fault or negligence.

"Therefore, an outstanding aspect of the plan is the provision by which the tort-feasor is exempted from liability whether or not he has incurred negligence, for the amount of $1,000 for mental and moral sufferings and humiliation and up to the

---

[5] In *Rivera* v. *Batistini, ante,* p. 497, we decided that the $1,000 exemption applies for *each* victim of the accident, that is individually and not in a global manner.

amount of $2,000 for other damages. In order that this aspect of the program be effective, the Commissioner of Insurance shall apply the necessary measures to the effect that the private insurers offer to the public insurance with coverage in excess of these limits.

"This provision, however, does not exclude, in any manner whatsoever, the right of the victim or his beneficiaries to claim by court action and on the basis of the principle of liability for fault or negligence. It only reduces, up to the sums aforeindicated or the total amount of the benefits paid by the Administration for damages other than sufferings, if they would exceed said amount, the judgments which in due time the court may impose as compensation. The excess shall belong, as it has been up to the present, to the victim and his claimant beneficiaries.

"This limitation of the right to claim for damages is amply compensated by the benefits provided by the measure. These benefits, not being dependent on a previous determination of liability, or on the solvency of the person responsible, may be made available to the victim and his dependents, in time to prevent that the accident would result in a serious economic problem to the family." *Diario de Sesiones, supra* at 1042.

## II

Does the deduction claimed extend to the insurance company of the person responsible for the accident? Appellant argues that the deduction is established in favor of the immediate person responsible for the accident, of the one who has incurred negligence and who is a natural person. He relies on § 8 of the Act, 9 L.P.R.A. § 2058, particularly on that part of subdivision (2) which states: "*Any person responsible, through a negligent act of his own, for damages or injuries for which benefits are provided herein, shall be exempted from the principle of liability on the basis of negligence. . . .*" and that part of subdivision (3) which reads: "*Any person whom a court may declare, in a civil action connected with the possession, maintenance or operation of a motor vehicle, guilty of having caused through*

*negligence* injuries ... shall be entitled to a deduction in the judgment ...." (Italics ours.)

He maintains that the deduction could not benefit the insurance company, since in jurisdictions like ours which permit a direct action against the insurer, distinct and separate from the action against the insured, the company is precluded from setting up personal or private defenses of the insured. He cites the cases of *Insurance Company of P.R.* v. *Ruiz Morales*, 96 P.R.R. 170 (1968); *Ortiz* v. *Municipal Government of Ponce*, 94 P.R.R. 449 (1967); *Cuchi Coll* v. *Government of the Capital*, 93 P.R.R. 715 (1966); *García* v. *Northern Assurance Co.*, 92 P.R.R. 236 (1965).

The assignment lacks merit. The $1,000 deduction for the mental sufferings of the victim is applicable not only to the natural person driving the motor vehicle and who causes the accident and damages to the victim, but also to the *natural* or *juridic* party on which, on the basis of any relation with the former, liability may be imposed for the payment of the damages sustained by the victim. That is inferred from the language of subdivision (1) of § 8 of the Act which in granting the deduction or relief refers to "the responsible party from the payment"[6] and it should not be inferred that the deduction does not cover the insurance company.

■ The foregoing, together with the legislative history of the measure, indicates that the intention was that the deduction would be extended to the insurer. In reference to this section the Report of the Joint Commission which proposed House Bill 874, points out:

---

[6] Said subdivision reads as follows:

"(1) The benefits provided by this chapter for injuries sustained as a result of automobile accidents which occurred in the Commonwealth of Puerto Rico shall be paid, up to the limits indicated in this section, in substitution of the sums that otherwise the victim would be entitled to claim under the principle of liability on the basis of tort, *relieving the responsible party* from the payment of all claims up to said limits or up to the amount of the benefits collected by the victim and his beneficiaries, whichever of the two is the higher." (Italics ours.)

"In order that this aspect of the program be effective, the Commissioner of Insurance shall apply the necessary measures to the effect that the private insurers offer to the public insurance with coverage in excess of these limits."

By virtue of this recommendation, the Commissioner of Insurance approved, effective January 1, 1970, an endorsement which was incorporated into all the automobile policies, including the policy involved in the present suit,[7] which in its pertinent part reads as follows:

"Puerto Rico Amendatory Endorsement

It is agreed that:

1. The insurance afforded under any bodily injury liability coverage of the policy does not apply with respect to any accident occurring in the Commonwealth of Puerto Rico and arising out of the ownership, maintenance or use, including loading and unloading, of any vehicle, unless the amount of loss recoverable, on account of the bodily injury sustained by the person suffering bodily injury, sickness or death as a result thereof exceeds (a) $1,000 for physical and mental sufferings (including pain, humiliation, and similar damages) and (b) $2,000 by reason of other damages or losses not included in (a), but this limitation shall apply only to the extent that the person or organization responsible for such injury is exempt from legal liability with respect thereto by reason of the Puerto Rico 'Automobile Accident Social Protection Act.' "

So, it is clear that the insurance contract contains the deduction in controversy. The deduction is part of the conditions and coverage of the insurance. If it were not so, the insurer would be covering and collecting premiums for a risk or damage to which its insured is not exposed, which would be a violation of § 11.020 of the Insurance Code, 26 L.P.R.A. § 1102 (Insurable subjects), which provides in part:

"Subject to the provisions of this title, a contract of insurance may be made with respect to any subject and the hazards

---

[7] See Appendix II of the brief of the Amicus Curiae and the "Motion to Inform" filed by the parties before this Court on August 24, 1971.

therein stated, as to which the possibility of damnification or an insurable interest exists . . . ."

The cases relating to the defenses which cannot be set up by the insurer and which are cited by appellant in his memorandum are not applicable. These are leading cases for the rule that the insurer is severely restricted in this jurisdiction, by virtue of the provisions of the Insurance Code, 26 L.P.R.A. §§ 2001–2004, authorizing direct actions against the insurer, from setting up technical or personal defenses of the assured. But these same cases explain that in no manner whatsoever this means that the insurer assumes an absolute liability. *García* v. *Northern Assurance Co., supra* at p. 246. Its liability, the Insurance Act states (26 L.P.R.A. § 2003), ". . . shall not exceed that provided for in the policy."

## III

Appellant's last assignment of error is a superficial attack to § 8 of the Act. He alleges that if it were construed in the sense that the person responsible for the accident as well as his insurer enjoy an exemption of $1,000 for the mental sufferings of the victim, § 8 would be unconstitutional, since the thousands of persons who every year suffer the consequences of automobile accidents in Puerto Rico would be deprived, by legislative fiat, of their right to recover from the tort-feasor or the latter's insurance company the total value for the damages caused to them. We infer therefrom that appellant relies on the provision of our Constitution concerning the deprivation of property without due process of law.

His position is extremely fragile. It suffices to read the brief statement of motives of the Legislature to realize the legitimate public interest it had in mind in adopting this measure. The Report of the Joint Committee which proposed the bill which later on became Act No. 138 states:

*"Scope of the Measure*

I—*Introduction*

"House Bill No. 874 has the purpose of establishing an insurance and traffic-accident compensation system and creating a public instrumentality to administer the system, which shall be known as 'Automobile Accident Compensation Administration.'

"The measure was proposed taking as a basis a study performed by Dr. Juan B. Aponte for the Legislature, by reference of the Bureau of the Budget and by virtue of the provision in Joint Resolution No. 105 of June 27, 1964.

"The objective which motivated the Legislature to approve J.R. No. 105 was the seeking of a solution to the ever-increasing problem of the traffic-accident victims who, within the present system of compensation grounded on the concept of negligence, do not receive any compensation for the injuries sustained.

"In addition to the sufferings produced by body injuries which in many cases result in the loss of the functioning of the extremities and other vital organs and often in the loss of life, traffic accidents have a great adverse economic and moral impact on the victim and the members of the family. In general terms, the larger the number of dependents and the younger the latter are, the more serious the economic impact will be in case of the death or disability of the head of the family. In case of adult dependents, the economic impact will be more serious to the extent that the degree of dependence of the latter is greater. The moral impact cannot be measured. In one and the other case, the helplessness of the family may get to be complete.

"As a result of the increasing incidence of accidents, the number of traffic-accident victims has been increasing every year in Puerto Rico at a rate which constitutes a motive of great concern for our society. Even though these victims can avail themselves of the judicial remedy to file suit against the tort-feasor, the latter frequently lacks economic means to answer for damages. This is very common in Puerto Rico, where the majority of the drivers are insolvent or are not insured.

"On the other hand, the judicial procedure to be followed to obtain compensation is long and costly, and sometimes it takes years for the victim, if he can establish defendant's negligence,

to obtain judgment in his favor. After obtaining said judgment there remains to be done the arduous and often futile task of collecting the same from an insolvent and uninsured person.

"This situation, which already has the category of a social problem, is the background on which the measure under consideration has been planned." 22 *Diario de Sesiones* 1041 (1968).

■ The modern doctrine which refers to the deprivation of property without due process of law is that the courts shall not enter into consideration of the wisdom of the legislative measures, but rather that they will uphold their constitutionality unless they lack a lawful public purpose, or that they are clearly arbitrary or that they bear no reasonable relation to the public purpose contemplated. *Commonwealth* v. *Márquez*, 93 P.R.R. 382 (1966); *Commonwealth* v. *Rosso*, 95 P.R.R. 488 (1967), *appeal denied*, 393 U.S. 14 (1968); *reconsideration denied*, 393 U.S. 971 (1968).

Section 8 is only a piece within the overall plan conceived by the Legislature in Act No. 138 in an endeavor to procure that to a great number of the automobile-accident victims be guaranteed certain medical services and, in some cases, compensation for injuries, which otherwise, either on account of the economic insolvency of the tort-feasor or for lack of fulfillment of the previous conditions required for a determination of liability by court action prosecuted in the traditional manner, they would not receive.

The deductibility of the amounts for the concepts established in § 8 is a limitation of the right to obtain total compensation after the exercise and experience of a judicial prosecution which not on few occasions is long and distressing. It constitutes a limitation to said right in the cases, which are actually the least, where the tort-feasor is not insolvent. But the lawmaker had this in mind in approving this legislation. In the aforesaid Report, it is indicated:

"This limitation of the right to claim for damages is amply

compensated by the benefits provided by the measure. These benefits, not being dependent on a previous determination of liability or on the solvency of the person responsible, may be made available to the victim and his dependents in time to prevent that the accident would result in a serious economic problem to the family." (22 *Diario de Sesiones* 1042.)

Other sources of opinion which have expressed themselves in favor of deductions like this one, and which probably influenced in the adoption of such deductions in the reform plans of several states, add that in practice, the compensation for sufferings has lent itself to much misuse, and that it has served in a great measure as a sub rosa payment for plaintiff's attorney's fees. Rokes, *No-fault Insurance* 183. In a recent article entitled "Insurance: the Road to Reform," published in the review *Consumer Reports*, several goals are established, which, in the interest of the consumers, a reform program of the automobile insurance should comply with. One of said goals is the following:

"7. . . . The number of claims for pain and suffering should be greatly curtailed, leaving only the most serious ones. Most such claims today are paid to victims of minor injuries rather than to the seriously hurt. The average person with medical expenses of less than $100 and with a lawyer to press his claim receives six times his loss. With the elimination of petty claims for pain and suffering, the insurance system might be able to pay, in addition to out-of-pocket losses, at least some compensation to seriously disfigured and permanently disabled victims." 36 *Consumer Reports* 226 (April 1971).

In passing judgment on the validity of § 8 we cannot ignore the foregoing. We concur with the opinion of the Legislature. The measure is fully supported on the basis of legitimate needs and social problems existent in the country. Its capability to attack them and seek relief or solution to them cannot be seriously doubted. The legislative measure

under consideration bears a reasonable relation to the public purpose contemplated.[8]

The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos took no part in the decision of this case.

---

[8] *Pinnick* v. *Cleary*, 271 N.E.2d 592 (Mass. 1971), upheld the constitutionality of a Massachusetts statute drafted in the same terms of Act No. 138 to modify the automobile-accident compensation system, establishing a compulsory insurance, a basic compensation regardless of negligence and certain other limits to the right to sue in "tort" the person causing the accident. As to the limitation imposed by said statute to sue for physical and mental sufferings, the Supreme Court of Massachusetts points out the following: (1) that the law in question has not deprived plaintiff of any vested right, since the cause of action arose at the time of the accident, when the law was already in force; (2) the law is not a violation of the due process of law because it bears legitimate objectives, which are: to decrease calendar congestion in the courts (which is an acute problem in Massachusetts), to reduce the high cost of automobile insurance and to increase the efficiency in the administration of said insurance; (3) the law provides for a reasonable substitute for pre-existent rights, since it provides for moderate remedies for all cases where the former system provided more advantageous remedies, but only in some cases. In *New York Central R.R.* v. *White*, 243 U.S. 188 (1916), the Supreme Court of the United States, in upholding the constitutionality of the Workmen's Accident Compensation Act of the state of New York, permitted a more disadvantageous substitution.

In Puerto Rico the Workmen's Accident Compensation Act provides that the benefits provided by the State Insurance Fund shall be the only remedy of the worker when he suffers a labor accident and cannot file claim against his employer if the latter is insured. 11 L.P.R.A. § 21. The benefits enumerated by said law do not include compensation for physical and moral sufferings. The constitutionality of this act has been upheld by this Court in *Montaner* v. *Industrial Commission*, 54 P.R.R. 52 (1939); *Heirs of Rodríguez* v. *Industrial Commission*, 53 P.R.R. 784 (1938). See *Cardona* v. *Industrial Commission*, 79 P.R.R. 633, 637 (1956).

*Grace* v. *Howlett*, decided by the Illinois Circuit Court for Cook County on December 29, 1971, 40 U.S.L.W. 2437, declares unconstitutional an Illinois statute which limits the amount recoverable in tort for physical and mental sufferings immediately after an automobile accident. The statute did not create compulsory insurance. The Court stated that in this last aspect the crucial defect of the law is found, since it unreasonably discriminates against the victims who unfortunately suffer an accident with an uninsured automobile driver. Furthermore the law conditions the maximum amount recoverable for sufferings to the amount for medical expenses. Since medical expenses vary according to the economic capacity

of the victim and the place and persons who offer the treatment, there is
discrimination without any basis or legitimate motive whatsoever. These
objections are not applicable to Act No. 138 of Puerto Rico.

For an analysis of both cases, that of Massachusetts and that of
Illinois, you may see the Annotation in 42 A.L.R.3d (1972) on the theme
*"Validity and Construction of 'No-Fault' Automobile Insurance Plans."*